**UNITED STATES of America,**
**Appellee,**

v.

**Jacob PLITMAN, Defendant–Appellant.**

**Docket No. 99–1177.**

United States Court of Appeals,
Second Circuit.

Argued May 28, 1999.
Decided Sept. 30, 1999.

James A. Bruton, III, Williams & Connolly, Washington, D.C. (Kirsten M. Schimpff, Williams & Connolly, Charles E. Clayman, Clayman & Rosenberg, New York, NY, on the brief), for Defendant–Appellant.

Stanley J. Okula, Jr., Assistant United States Attorney (Mary Jo White, United States Attorney, Southern District of New York, Lewis J. Liman, Assistant United States Attorney, on the brief), New York, NY, for Appellee.

Before: KEARSE, WALKER and POOLER, Circuit Judges.

POOLER, Circuit Judge:

Jacob Plitman appeals from the March 5, 1999, judgment of the United States District Court for the Southern District of New York (Loretta A. Preska, *Judge*) convicting him after a jury trial of two counts of tax evasion in violation of 26 U.S.C. § 7201.

## BACKGROUND

A federal grand jury returned a two-count indictment against Plitman on March 16, 1998, and charged that Plitman evaded his income taxes in the tax years 1991 and 1992 when he substantially under-reported his income to the Internal Revenue Service ("IRS"). The government alleged that while Plitman worked for Silatex USA, Ltd. ("Silatex") he directed his employer to pay approximately 75 percent of his income to FMP Investments, Ltd. ("FMP"). Silatex was a New York affiliate of Silatex, S.A., a Venezuela-based company that manufactured women's clothing. FMP was a British Virgin Islands corporation that Plitman's cousins owned and over which Plitman held power of attorney. During the tax years 1991 and 1992, Silatex paid FMP $201,500. Of that amount, Plitman's cousins transferred approximately $157,000 to their accounts in the Israel Discount Bank, and $144,394 of the Israel Discount Bank account funds then personally benefitted Plitman. The money entered Plitman's personal bank account, paid his personal American Express account charges, and paid his son's college tuition. As a result of this scheme, the government alleged, Plitman evaded $23,349 in taxes in 1991 and $21,682 in taxes in 1992.

Judge Preska conducted a pre-trial conference on May 7, 1998, which Plitman attended. During the conference, the district court suggested a trial date of May 18, and the government requested an adjournment. The prosecutor objected to the date because he sought to depose or obtain the voluntary appearance of Hayim (or Jimmy) Belility, Silatex's president, who lived in Venezuela. IRS agent Peter O'Keeffe had interviewed Belility over the telephone in June 1995, and Belility had said, "it was Mr. Plitman's idea to have 75 percent of his compensation sent to him as checks to FMP." During the course of the pretrial conference, defense counsel stipulated to the admission of O'Keeffe's hearsay account of his conversation with Belility. Despite the stipulation, the prosecutor expressed his unhappiness at the early trial date because he wanted to obtain additional information from Belility and present him as a live witness. The prosecutor said he was "completely surprised and essentially off guard" with the May 18 trial date, but Plitman's lawyer pressed for the early date. Judge Preska scheduled trial for May 18.

The jury trial took place from May 18 until May 21. In addition to O'Keeffe's testimony about his conversation with Belility, the government presented Deonarain Brijmohan, Silatex's former comptroller. Brijmohan testified that when Plitman began working for Silatex, Plitman instructed Brijmohan to pay him $2,000 per month gross pay and to pay $7,500 per month to FMP. The comptroller further testified that he did not know what work FMP performed for Silatex in exchange for the money and that the payments to FMP coincided with Plitman's tenure with Silatex. At the time Plitman left Silatex, Belility gave Plitman a $20,000 check made payable to FMP and marked "final payment," Brijmohan testified. The government's direct case also consisted of documentary evidence including tax returns and bank records.

The jury convicted Plitman on both counts of tax evasion. The district court denied Plitman's motion for acquittal or a new trial by a memorandum and order dated January 25, 1999. Judge Preska sentenced Plitman to one year and one day imprisonment, two years supervised release, and a $100 special assessment. Plitman now appeals his conviction.[1]

## DISCUSSION

### I. Sixth amendment right to confrontation

Appellant claims a violation of his Sixth Amendment right to confront the witnesses against him. Specifically, Plitman contends that the district court committed plain error when it permitted Agent O'Keeffe to testify regarding his conversation with Belility because the testimony was inadmissible hearsay and defense counsel could not stipulate to the evidence's admission. Plitman argues that the stipulation was invalid because (1) he did not waive the right and defense counsel never said that his client waived the right and/or knew the risks involved; and (2) matters of trial strategy did not justify defense counsel's action. The government does not dispute that O'Keeffe's testimony was hearsay and not within an exception to the hearsay rule. Rather, the government contends that Plitman's stipulation through counsel was a valid waiver like any ordinary evidentiary stipulation in a trial. According to the government, nearly all evidentiary stipulations involve some loss of the right to confront witnesses, but our criminal justice system relies on the ability of defense counsel to decide what ultimately benefits their clients.

The parties agree that the plain error standard applies to this issue, which defendant did not raise at trial. A plain

1. Because the district court denied his motion for bail pending appeal, Plitman moved before the Second Circuit for continuation of his release pending appeal. On May 28, 1999, this panel denied Plitman's motion. Plitman's surrender date was June 2, 1999.

error affects defendant's substantial rights and must "seriously affect[ ] the fairness, integrity, or public reputation of judicial proceedings" in order to warrant action on appeal. *United States v. Gore,* 154 F.3d 34, 42 (2d Cir.1998) (internal quotation marks omitted). The error must be " 'so egregious and obvious as to make the trial judge and prosecutor derelict in permitting it, despite the defendant's failure to object.' " *Id.* at 43 (quoting *United States v. Tillem,* 906 F.2d 814, 825 (2d Cir.1990)).

▮ With this standard in mind, we look to the substance of Plitman's challenge to his counsel's waiver. Criminal defendants possess two types of constitutional rights, and a different waiver standard applies to each. *See Brown v. Artuz,* 124 F.3d 73, 77 (2d Cir.1997) (citing *United States v. Teague,* 953 F.2d 1525, 1531 (11th Cir.1992) (in banc)), *cert. denied,* 522 U.S. 1128, 118 S.Ct. 1077, 140 L.Ed.2d 135 (1998). The first category involves rights that defense counsel may waive on behalf of defendant because they concern strategic and tactical matters such as selective introduction of evidence, stipulations, objections, and pre-trial motions. *See id.* The second category involves rights that only defendant himself may waive because they are "personal" and include matters like pleading guilty, waiving a jury trial, pursuing an appeal, and deciding to testify. *See id.* at 77–78. When defendants personally waive their rights, the waivers "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

In her post-trial decision, Judge Preska held that Plitman's counsel made a valid waiver of his client's confrontation rights because the evidentiary stipulation did not implicate a personal right. We have not decided specifically whether and under what circumstances defense counsel may waive a defendant's right to confrontation.

Our opinion in *Brown v. Artuz* suggests that defense counsel may make the waiver where a stipulation involves trial strategy and tactics, even though the stipulation impacts on a defendant's constitutional rights. *See Brown,* 124 F.3d at 77. Other circuit courts of appeals have held that "counsel in a criminal case may waive his client's Sixth Amendment right of confrontation by stipulating to the admission of evidence, so long as the defendant does not dissent from his attorney's decision, and so long as it can be said that the attorney's decision was a legitimate trial tactic or part of a prudent trial strategy." *United States v. Stephens,* 609 F.2d 230, 232–33 (5th Cir.1980); *see also Wilson v. Gray,* 345 F.2d 282, 287–88 (9th Cir.1965); *Cruzado v. Puerto Rico,* 210 F.2d 789, 791 (1st Cir.1954). *But see Clemmons v. Delo,* 124 F.3d 944, 956 (8th Cir.1997) (stating that "the law seems to be clear that the right of confrontation is personal and fundamental and cannot be waived by counsel"), *cert. denied,* 523 U.S. 1088, 118 S.Ct. 1548, 140 L.Ed.2d 695 (1998).

In a case similar to the one before us, the Tenth Circuit Court of Appeals recently held that defense counsel could stipulate to the admission of hearsay evidence in which a police chief relayed the identification of defendant by the elderly crime victim, who did not testify at trial. *See Hawkins v. Hannigan,* 185 F.3d 1146, 1154–56 (10th Cir.1999). The Tenth Circuit found no Sixth Amendment violation because there was no indication that defendant disagreed with or objected to counsel's decision and the stipulation "was a matter of prudent trial strategy." *Id.* at 1154–55. The Eighth Circuit in *Clemmons* faced an entirely different set of facts in which neither defendant nor his counsel agreed to waive defendant's right to confrontation. *See Clemmons,* 124 F.3d at 956. We decline to follow the court's statement in *dicta* that counsel's waiver nonetheless would have been ineffective.[2]

**2.** The Supreme Court case upon which the

Eighth Circuit relied in *Clemmons* involved a

We recognize that examination of the circumstances of each case is essential when considering any waiver of constitutional rights because "[v]ariations in the factual context giving rise to the issue of waiver of any one right of the accused are infinite." *Wilson*, 345 F.2d at 290. We also recognize that we must accord proper weight to the role of defense counsel in fashioning an overall trial strategy, including one involving waiver of the right to confrontation, for the defendant's best advantage. *See id.* at 289–90. A well developed body of case law protects defendants from constitutionally defective actions of their attorneys. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Given these safeguards, we reject Plitman's argument that a defendant in every instance personally must waive the right to confront the witnesses against him. We therefore join the majority of circuit courts of appeals and hold that defense counsel may waive a defendant's Sixth Amendment right to confrontation where the decision is one of trial tactics or strategy that might be considered sound.

Turning to Plitman's appeal, the facts clearly support Judge Preska's conclusion that defendant's waiver of Sixth Amendment rights through counsel was valid. Plitman achieved several tactical advantages as a result of his decision to allow the hearsay testimony of O'Keeffe. Those advantages included a quicker trial date, limitations on Belility's testimony, and the opportunity to attack the accuracy of O'Keeffe's notes and recollection of the hearsay conversation. Plitman's challenges to the prudence of the tactical decision are unavailing. The transcript of the May 7, 1998, pretrial conference clearly demonstrates that the government did not anticipate the fast trial date and wanted to bring Belility to the United States as a live witness who could supply additional evidence incriminating Plitman. The same pretrial conference shows that defense counsel wanted a quick trial and stipulation in order to avoid Belility's testimony. Plitman himself was present during this discussion and did not object to his lawyer's decision. During the trial, defense counsel extensively attacked O'Keeffe's recollection in cross examination and summation in order to lessen any impact from Belility's statement. Plitman also introduced evidence that Belility spoke with an accent, making it difficult for O'Keeffe to understand him. Defense counsel argued that Belility's absence from trial indicated his overall lack of credibility. All of these factors support our conclusion that Plitman's attorney made a prudent and sound decision when he entered the stipulation in which Plitman acquiesced. We hold that Plitman suffered no loss of his Sixth Amendment confrontation rights and that it was not plain error for the district court to have accepted the stipulation regarding admission of O'Keeffe's hearsay testimony.[3]

## II. Jury instructions

Plitman next contends that the jury instructions were plainly erroneous because they did not adequately explain an element of tax evasion, that is, tax deficiency. Plitman argues first that Judge Preska should

---

criminal defendant who did not plead guilty but who consented to a bench trial. Defendant's counsel agreed to a "prima facie trial," which was the equivalent of a guilty plea because the state offered prima facie evidence of guilt that defendant did not challenge or contradict with his own evidence. *See Brookhart v. Janis*, 384 U.S. 1, 6–7, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966). The Supreme Court reversed the resulting conviction. *See id.* at 8, 86 S.Ct. 1245. The stipulation in *Brookhart* therefore was not merely a matter of trial tactics or strategy but implicated fundamental due process concerns.

**3.** Although we find no error in this case, we also note that Plitman suffered no prejudice when Judge Preska admitted the hearsay statement into evidence. Although O'Keeffe's testimony about his conversation with Belility was damaging to Plitman, the government presented substantial additional evidence to support the conviction. The sufficiency of the evidence is discussed more fully below.

have instructed the jury that FMP was a separate taxable entity so that payments from Silatex to FMP could have been FMP's income and not funds within Plitman's control. Plitman argues second that Judge Preska should have instructed the jury that because Plitman lived much of the time in Venezuela, he could have been entitled to a foreign earned income exclusion under the tax code. The government responds principally that each of these arguments represents defense theories that the evidence at trial did not support, so no additional instructions were warranted.

 Because defendant did not object to the jury charges at the time of trial or request the instructions he now advocates on appeal, the plain error standard of review applies. *See United States v. Tillem*, 906 F.2d 814, 825 (2d Cir.1990). "The failure to instruct on an essential element of the offense generally constitutes plain error...." *United States v. Javino*, 960 F.2d 1137, 1141 (2d Cir.1992). The elements of tax evasion are willfulness, the existence of a tax deficiency and an affirmative act of evasion, all of which the government must prove. *See United States v. D'Agostino*, 145 F.3d 69, 72 (2d Cir.1998). Plitman argues that Judge Preska failed to instruct the jury how to determine whether a tax deficiency existed.

The district court charged the jury on each of the three elements of tax evasion. With respect to the element of a tax deficiency, Judge Preska explained that the additional tax due must be substantial and instructed the jury that gifts or loans are not considered gross income for tax purposes. Specifically, Judge Preska stated

> To prove that substantial additional tax was due, the government must prove beyond a reasonable doubt that, A, the defendant received substantial income in addition to what he reported on his income tax returns and, B, that there was tax due in addition to what was shown to be due on the return.

In order to prove that the defendant received substantial additional income that was not reported on his tax return, the government has introduced evidence that payments were made by Silatex U.S.A. Limited to FMP Investments Limited. The government contends that these payments were part of Jacob Plitman's compensation from Silatex U.S.A.

The value of property acquired by gift or as a loan is not considered gross income for tax purposes under the Internal Revenue Code. Money paid by one person to or for the benefit of another is a gift if it is paid out [sic] a "detached and disinterested generosity ... out of affection, respect, admiration, charity or like impulse."

If you find, based on all of the evidence that the government has established beyond a reasonable doubt that the defendant received substantial income in addition to what he reported on his income tax return for the year in question, then you must decide whether there was tax due in addition to what was shown to be due on the return as a result of the defendant's additional unreported income.

In reaching your decision on this issue you should consider, along with all the other evidence, the testimony introduced during the trial concerning the computation of the defendant's additional tax liability when the alleged additional income was taken into account.

The district court did not further discuss computation of Plitman's potential additional tax liability.

 The additional instruction Plitman seeks regarding FMP's status as a separate tax entity is irrelevant to this case. While it is true that a corporation is a distinct tax entity that earns income and pays taxes, that fact has no bearing on the evidence at trial or the government's efforts to prove that payments to FMP were Plitman's substantial income. The government presented evidence that Silatex's payments to FMP always were in the con-

trol of or for the direct benefit of Plitman and were not income that FMP earned. Judge Preska specifically instructed the jury that it was the government's burden to prove the payments were Plitman's income rather than gifts or loans. It was not plain error when Judge Preska did not state the inverse of that instruction, that is, that the government did not meet its burden if the payments to FMP were FMP's income.

■ The instruction Plitman requests for the first time on appeal concerning the foreign earned income exclusion has no relevance to the government's burden to prove that Plitman received substantial income in addition to that which he reported to the IRS, resulting in a tax deficiency. The instruction Plitman seeks with respect to the earned income exclusion—unlike the instruction regarding gifts—is not a definition of income but a taxpayer election that takes funds out of the scope of income upon proof of certain facts. See 26 U.S.C. § 911(a)(1) (1994). Thus, the exclusion is not a part of the elements of the tax evasion crime but instead is a theory or set of facts that defendant may attempt to prove in order to exclude funds from the ambit of unreported taxable income. Judge Preska correctly ruled in her post-trial decision that Plitman offered no evidence in support of this theory to warrant a jury charge. See United States v. Bok, 156 F.3d 157, 163 (2d Cir.1998) (holding that defendant bears burden of producing evidence on each key element of defense theory in order to receive jury instruction). The only evidence of Plitman's foreign residence is the vague testimony of Silatex's bookkeeper regarding Plitman's visits to the New York office, and it was not plain error when, based on this slight evidence, Judge Preska did not spontaneously offer instruction on foreign earned income. Consequently, we reject Plitman's challenges to the jury charge that Judge Preska presented at trial.

## III. Sufficiency of the evidence

■ Finally, Plitman argues that the evidence at trial was insufficient to convict him because the government failed to prove that Plitman owed and failed to pay additional taxes. We review challenges for sufficiency of the evidence de novo and view the evidence in the light most favorable to the government. See United States v. Leslie, 103 F.3d 1093, 1100 (2d Cir.), cert. denied, 520 U.S. 1220, 117 S.Ct. 1713, 137 L.Ed.2d 837 (1997). In order to prevail, defendant must show that "no rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." Id. (internal quotation marks omitted).

Plitman contends that the government failed to show that $59,500 of Silatex's payments to FMP—payments other than the monthly checks for $7,500—were his diverted compensation. Appellant also claims that the only evidence linking him to the monthly checks to FMP was Belility's hearsay statement. Finally, Plitman continues to press his theories that payments from Silatex to FMP should have been treated as FMP's income or that he was entitled to a foreign earned income exclusion. None of these arguments has merit.

The government presented sufficient evidence from which a rational trier of fact could conclude that all of Silatex's payments to FMP constituted Plitman's income on which he did not pay taxes. The government demonstrated a close connection among FMP, Plitman, and Plitman's cousins, and this connection included a flow of money from FMP's bank account into the personal accounts and financial affairs of Plitman. The government introduced documentary evidence of payments from Silatex to FMP that coincided with Plitman's tenure at Silatex. The government also presented the testimony of Silatex's bookkeeper, who stated that Plitman directed the monthly payments to FMP and that Silatex received no services or invoices from FMP in connection with any

 

of the payments. The jury also was entitled to rely on the hearsay statement of Belility regarding the payment arrangement. This evidence was sufficient to permit a rational trier of fact to conclude that all of the payments to FMP were Plitman's income. In addition, as noted more fully in our discussion of the jury instructions, Plitman offered no evidence in support of his claims regarding taxable income to FMP and his entitlement to the foreign earned income exclusion. Even if there had been evidence regarding these theories in the record, the jury was free to reject it. *See generally United States v. Chang An–Lo,* 851 F.2d 547, 554 (2d Cir. 1988); *see also United States v. Miller,* 116 F.3d 641, 676 (2d Cir.1997) (holding that "where there are conflicts in the testimony, we must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses"), *cert. denied,* —— U.S. ——, 118 S.Ct. 2063, 141 L.Ed.2d 140 (1998). Although much of the evidence at Plitman's trial was circumstantial, it was sufficient to permit a rational jury to convict him on the tax evasion charges.

## CONCLUSION

For the foregoing reasons, we affirm Plitman's convictions in all respects.