(No. 99568.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOANNE Y. PHILLIPS, Appellee.

*Opinion filed December 1, 2005.*

Lisa Madigan, Attorney General, of Springfield, and Terence M. Patton, State's Attorney, of Cambridge (Gary Feinerman, Solicitor General, Linda D. Woloshin and Leah C. Myers, Assistant Attorneys General, of Chicago, and Norbert J. Goetten, Lawrence M. Bauer and Terry A. Mertel, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

Robert Agostinelli, Deputy Defender, and Donna Kelly and Thomas A. Karalis, Assistant Defenders, of the Office of the State Appellate Defender, of Ottawa, for appellee.

JUSTICE KARMEIER delivered the opinion of the court:

Defendant, Joanne Y. Phillips, was charged in the circuit court of Henry County with unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(c)(2) (West 1998)), unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 1998)), unlawful possession of cannabis (720 ILCS 550/4(a) (West 1998)), and driving while license suspended (625 ILCS 5/6—303 (West 1998)). A jury found defendant guilty of the charged offenses. Defendant was subsequently sentenced to four years' imprisonment for the offense of possession of a controlled substance with intent to deliver. The conviction for possession of a controlled substance was vacated; defendant was sentenced to time served on the cannabis conviction; and a conviction was entered for the offense of driving while license suspended.

Defendant appealed, arguing, *inter alia*, that the admission into evidence of lab reports violated her constitutional right to be confronted with the witnesses against her, an argument that appears to have been

premised, "significantly," upon our decision in *People v. McClanahan*, 191 Ill. 2d 127 (2000) (holding section 115—15 of the Code of Criminal Procedure of 1963 unconstitutional because it impermissibly required a defendant to take a procedural step to secure his constitutional right of confrontation). The appellate court affirmed the judgment and sentence of the circuit court. *People v. Phillips*, 326 Ill. App. 3d 157 (2001). The court found defendant's confrontation contention "unavailing," noting that "the lab reports were properly admitted into evidence *** pursuant to the stipulation of the parties." 326 Ill. App. 3d at 161.

This court denied the defendant's ensuing petition for leave to appeal, but issued a supervisory order directing the appellate court to vacate its judgment and reconsider in light of *People v. Campbell*, 208 Ill. 2d 203 (2003), "to determine if a different result is warranted." See *People v. Phillips*, 208 Ill. 2d 550 (2004) (supervisory order).

In compliance with this court's directive, the appellate court reconsidered the confrontation issue and reached a contrary result. 352 Ill. App. 3d 867. We allowed the State's petition for leave to appeal (177 Ill. 2d R. 315(a)), and we now reverse the judgment of the appellate court. The following facts are pertinent to our disposition.

## BACKGROUND

Defendant was tried before a jury on May 3, 2000. From the outset, in opening statements, it was made clear to the jury that the contested issue, with respect to the controlled substance charge, was whether the defendant knowingly possessed the cocaine discovered in her vehicle. In his opening statement, the prosecutor outlined the evidence the State expected to present in support of the controlled substance charges. Defense counsel, in his initial remarks to the jury, presented

defendant's theory of the case, claiming that defendant had no knowledge of the cocaine found in her car, and that the cocaine belonged to one or both of her passengers. Defense counsel noted that defendant had denied knowledge of the drugs for a considerable time after the drugs were found. He suggested that defendant had only given an inculpatory statement because she was afraid of the male passenger in the car and "because of what she felt were promises by Deputy Hampton" that "it would be better for her and easier for her if she just said the stuff was hers."

With respect to the custody and analysis of the drugs, the prosecutor advised the jury in his opening remarks that there was "an agreement between the State and *** defense counsel" regarding the testimony of people who handled and tested the drugs found in defendant's car. On four occasions, the prosecutor referred to stipulations concerning that evidence. Defendant was present when the remarks were made. Defense counsel did not object to those references.

The first and only witness called by the State was Henry County sheriff's deputy Glenn Hampton. Hampton testified that he stopped defendant's vehicle in the early morning hours of November 5, 1999, because defendant's vehicle had veered off the roadway. Hampton asked the defendant for her license, registration, and proof of insurance. The defendant produced a driver's license, and Hampton escorted her to his squad car, while the defendant's two passengers remained in her vehicle. Defendant indicated that she thought her license was suspended, and shortly thereafter Hampton received radio confirmation of the suspension. Hampton then placed the defendant under arrest for driving with a suspended license and returned to the defendant's vehicle.

Hampton asked the two passengers to step out of the

vehicle, and he proceeded to search the vehicle's interior. Underneath the driver's seat, near the transmission hump, Hampton found a crumpled paper towel, inside of which were 25 individual plastic bags containing a white substance that appeared to be crack cocaine. In the front ashtray, Hampton found a half-burnt marijuana cigarette.

Hampton walked back to his squad car and confronted the defendant with the substances he had recovered from her vehicle. She asked what it was. After Hampton read the defendant her *Miranda* rights, he told her "we have to discuss this[.] I found this cocaine in your car right next to your feet[.] We need to discuss this." Defendant again indicated she had no idea what the substance was.

Hampton then returned to defendant's vehicle and questioned her passengers. Hampton subsequently advised the defendant that her passengers had denied knowledge of the cocaine. He pressed her again to discuss the matter. Hampton said he then noticed the defendant becoming teary-eyed. According to Hampton, defendant told him she needed money to pay bills and feed her children. She said the two passengers in the car did not know anything about the cocaine, which she had picked up in Chicago.

Hampton transported defendant to the county jail and again read her *Miranda* rights. Defendant signed a written statement which was consistent with the oral admissions she had made to Hampton. Hampton denied that he had made any promises to defendant to obtain her inculpatory statement.

Under cross-examination, Hampton acknowledged that the defendant's passengers had remained in her vehicle, unattended, when Hampton initially spoke with defendant in his squad car prior to the search of defendant's vehicle.

After Hampton's testimony, the State introduced the

defendant's written statement, and an Illinois State Police lab report signed by Denise Hanley, a forensic scientist. Hanley's report was accompanied by an "Affidavit in Lieu of Court Appearance," "provided in accordance with *** 725 ILCS 5/115—15." The report revealed that "5.4 grams of off-white chunks from five plastic bags" were tested and were found to contain cocaine. Hanley did not test the 7.1 grams in the remaining bags. The State introduced a second report signed by Robert Streight, an employee of the Henry County sheriff's office, indicating that 0.1 gram of plant material submitted to him contained cannabis. Defense counsel indicated he had no objection to admission of the lab reports. Defendant was present when the reports were admitted, and she voiced no dissent.

In her defense, the defendant testified that, in exchange for $100 and gas money, she was transporting the two passengers to Chicago and back to Davenport, Iowa. When Hampton stopped her, she did not know there was cocaine in the car, and she so advised the officer after he found it and confronted her. She said Hampton badgered her into confessing. She indicated that Hampton had informed her if she cooperated the judge would be notified, she would be home with her children the next day, Hampton would not notify the Department of Children and Family Services, and her car would not be towed. In addition, the defendant testified it was only after Hampton threatened to charge her with drug trafficking and possession of a stolen vehicle, and indicated that she would never see her children again, that she admitted knowledge of the drugs. The defendant acknowledged signing the written statement, but testified at trial that the statement was untrue. She maintained that she did not know of any drugs in the car except the marijuana, and she had told the passenger smoking the marijuana to stop.

The defendant was convicted of all counts. At sentencing, the defendant adamantly maintained her innocence. The trial judge indicated that he would have placed the defendant on probation, but that the legislature had stripped him of his discretion to do so. The defendant was sentenced to four years' imprisonment for unlawful possession of a controlled substance with intent to deliver. As noted, the court vacated the unlawful possession of a controlled substance count, gave the defendant credit for time served on the cannabis count, and entered judgment on the conviction for driving while license suspended.

On appeal, the appellate court characterized defendant's confrontation argument as follows:

"Relying significantly on the recent case of *People v. McClanahan*, 191 Ill. 2d 127, 729 N.E.2d 470 (2000), the defendant argues that because an element of her alleged drug-related offenses was proven through lab reports, she was denied her sixth amendment right to be confronted by the witnesses against her." *Phillips*, 326 Ill. App. 3d at 160.

We note, in *McClanahan*, this court struck down a statute that allowed the State, in drug prosecutions, to use lab reports in lieu of actual testimony as *prima facie* evidence unless the defendant filed a demand for the testimony of the witness who prepared the report within seven days of the defendant's receipt of the report. We held that the statute impermissibly required the defendant to take a procedural step to secure his confrontation rights. *McClanahan*, 191 Ill. 2d at 140.

In defendant's first appeal, the appellate court rejected defendant's argument, noting the holding of *People v. Avery*, 321 Ill. App. 3d 414 (2001), an appellate decision subsequent to *McClanahan*. The *Avery* court held that, absent the defendant's objection at trial, the trial court could properly consider hearsay lab reports regardless of the existence, or application, of section

115—15. *Avery*, 321 Ill. App. 3d at 418. The court reasoned that " 'testimony based on hearsay that is not objected to at trial should be given appropriate consideration.' " *Avery*, 321 Ill. App. 3d at 418, quoting *People v. Becerril*, 307 Ill. App. 3d 518, 526 (1999).

The appellate court in this case determined that the record revealed defense counsel had actually "stipulated" to admission of the lab reports. Therefore, the appellate court rejected defendant's contention "that she was denied her right to be confronted with the witnesses against her by the application of section 115—15 of the Code." *Phillips*, 326 Ill. App. 3d at 161.

When the appellate court subsequently reconsidered this matter at our direction, after our decision in *Campbell*, the appellate court's analysis changed significantly. From our decisions in *Campbell*, *McClanahan*, and *People v. Ramey*, 152 Ill. 2d 41 (1992), the appellate court gleaned a minimal requirement that someone—defense counsel or the circuit court—advise defendant of his options with respect to stipulations, of the "implications" of stipulating, of the "legal impact" of a stipulation, and that the record disclose such advisement. 352 Ill. App. 3d at 872.

The appellate court recognized that our decision in *Campbell* requires admonishments with respect to stipulations in only two instances: " '[w]here the stipulation includes a statement that the evidence is sufficient to convict the defendant or where the State's entire case is to be presented by stipulation.' " (Emphasis omitted.) 352 Ill. App. 3d at 872, quoting *Campbell*, 208 Ill. 2d at 221. While the appellate court acknowledged that *Campbell* does not require admonishments under the facts of this case (352 Ill. App. 3d at 872), it appears the appellate court fashioned its own broader rule out of passages from *Ramey* and *McClanahan* that were quoted in *Campbell*.

With regard to the first quoted passage, the appellate court's added emphasis is telling:

" ' "[T]rial counsel has the right to make the ultimate decision with respect to matters of tactics and strategy *after consulting with his client.* Such matters include what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike and what trial motions should be made. [Citation.] Such matters also include the defense to be presented at trial." ' " (Emphasis in original.) 352 Ill. App. 3d at 871, quoting *Campbell*, 208 Ill. 2d at 210, quoting *Ramey*, 152 Ill. 2d at 54.

Immediately after the quoted passage, the appellate court concluded:

"Construing the fundamental constitutional right [of confrontation] in conjunction with the supreme court's decision in *Campbell*, we conclude that in order to waive the defendant's sixth amendment right of confrontation by stipulating to the admission of evidence, there must be some affirmative showing or indication by the defendant in the record that he or she did not object to or dissent from the attorney's decision to stipulate." 352 Ill. App. 3d at 871.

The appellate court then quoted language this court employed in *McClanahan*. Referring to stipulations regarding lab reports, this court stated, " 'these stipulations properly require a defendant to make a voluntary, knowing, and intelligent decision whether he wishes to waive his right to confront the preparer of the report.' " See 352 Ill. App. 3d at 871, quoting *McClanahan*, 191 Ill. 2d at 137-38.

Synthesizing the foregoing quotations from *McClanahan* and *Ramey*, the appellate court held that the record must demonstrate that a defendant was advised of the consequences and implications of an evidentiary stipulation (352 Ill. App. 3d at 872) and, absent an "affirmative showing or indication *** in the record that he or she did not object to or dissent from the attorney's decision to stipulate," there is no valid waiver of defendant's sixth amendment right of confrontation (352 Ill. App. 3d at

871). Given its holding, the appellate court found it unnecessary to consider whether the agreement to stipulate was a sound trial tactic or prudent trial strategy. 352 Ill. App. 3d at 872.

## ANALYSIS

As a preliminary matter, we note that supervisory orders issued by this court are nonprecedential. *People v. Durr*, 215 Ill. 2d 283, 295 (2005). When, pursuant to our supervisory authority, we remand a case for reconsideration in light of a recent decision, we do not necessarily mean to imply that a different result is warranted. In some instances, that may well be the case; however, in others, reconsideration of the appellate court's analysis may simply be desirable to account for the recent decision and to ensure a uniform body of law. In any event, we expect the appellate court to exercise its independent judgment in such matters.

We begin our analysis with the well-established proposition that, in criminal proceedings, an attorney is authorized to act for his client and determine for him procedural matters and decisions involving trial strategy and tactics. *People v. Kaczmarek*, 207 Ill. 2d 288, 297 (2003); *People v. Bowman*, 138 Ill. 2d 131, 141 (1990). As this court has noted, this principle of agency is necessary in order for a representative system of litigation to function. *Bowman*, 138 Ill. 2d at 141. Indeed, as the Supreme Court aptly observed in *Taylor v. Illinois*, 484 U.S. 400, 417-18, 98 L. Ed. 2d 798, 816, 108 S. Ct. 646, 657 (1988): "Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has—and must have—full authority to manage the conduct of the trial. The adversary process could not function effectively if every tactical decision required client approval." The same principle operates in the appellate arena. See *Jones v. Barnes*, 463 U.S. 745, 751, 77 L. Ed. 2d 987, 993, 103

S. Ct. 3308, 3313 (1983) (appellate counsel must be allowed to present the client's case in accord with counsel's professional judgment by deciding what issues to present).

This court noted in *Campbell* that criminal defendants possess two types of constitutional rights, and a different waiver standard applies to each. *Campbell*, 208 Ill. 2d at 210; see also *United States v. Plitman*, 194 F.3d 59, 63 (2d Cir. 1999). The first category includes five decisions that ultimately belong to the defendant in a criminal case after consultation with his attorney: (1) what plea to enter; (2) whether to waive a jury trial; (3) whether to testify in his own behalf; (4) whether to tender a lesser-included-offense instruction; and (5) whether to appeal. *Campbell*, 208 Ill. 2d at 210. Beyond those decisions, however, " 'trial counsel has the right to make the ultimate decision with respect to matters of tactics and strategy after consulting with his client. Such matters include what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike and what trial motions should be made. [Citation.] Such matters also include the defense to be presented at trial.' " *Campbell*, 208 Ill. 2d at 210, quoting *Ramey*, 152 Ill. 2d at 54.

In *Campbell*, the defendant seized upon a single sentence in *McClanahan* to support his contention that "any waiver of the right to confrontation must be a knowing waiver made by the defendant personally." *Campbell*, 208 Ill. 2d at 212. As noted, the appellate court in this case utilized the same sentence in its analysis. That sentence, which refers to stipulations to lab reports, reads as follows: "Unlike section 115—15, these stipulations properly require a defendant to make a voluntary, knowing, and intelligent decision whether he wishes to waive his right to confront the preparer of the report." *McClanahan*, 191 Ill. 2d at 137-38. In *Campbell*, this

court flatly rejected defendant's contention that the foregoing language required "a knowing waiver by the defendant personally." This court stated:

"We decline to read *McClanahan* so broadly. Contrary to defendant's interpretation of *McClanahan*, this court has never held that only a defendant can waive his sixth amendment right of confrontation. In fact, this court has never directly addressed the issue of whether defense counsel may waive a defendant's right of confrontation by stipulating to the admission of evidence. We note, however, that a majority of the courts that have addressed the issue have held that counsel in a criminal case may waive his client's sixth amendment right of confrontation by stipulating to the admission of evidence." *Campbell*, 208 Ill. 2d at 212-13.

This court in *Campbell* reviewed federal and state decisions on point, focusing, in particular, on the federal court of appeals' opinion in *Plitman*. See *Campbell*, 208 Ill. 2d at 213-14.

In *Plitman*, defendant claimed that his attorney's stipulation to certain testimony was invalid because: (1) Plitman had not waived his sixth amendment right to confront the witnesses against him; (2) his attorney never said that Plitman had waived his right of confrontation and/or knew the risks involved in doing so; and (3) defense counsel's actions were not justified as matters of trial strategy. See *Plitman*, 194 F.3d at 62. The court of appeals rejected Plitman's argument that a defendant must in every instance personally waive the right to confront the witnesses against him. The court held that the defendant's waiver of his right of confrontation, through counsel, was valid because the defendant achieved several tactical advantages as a result of the stipulation, and defendant did not object during the discussion concerning the stipulation or when his attorney made the decision to stipulate. *Plitman*, 194 F.3d at 64. As the court noted in *Plitman*, "Plitman himself was present" when his attorney waived his right of

confrontation, "and did not object to his lawyer's decisions." *Plitman*, 194 F.3d at 64. Moreover, citing *Strickland v. Washington*, 466 U.S. 668, 688-95, 80 L. Ed. 2d 674, 693-98, 104 S. Ct. 2052, 2064-68 (1984), the court observed: "A well developed body of case law protects defendants from constitutionally defective actions of their attorneys." *Plitman*, 194 F.3d at 64.

After discussing *Plitman*, and the holdings of other courts, this court stated in *Campbell*: "We agree that defense counsel may waive a defendant's right of confrontation as long as the defendant does not object and the decision to stipulate is a matter of trial tactics and strategy." *Campbell*, 208 Ill. 2d at 217. However, we held that a defendant must *personally* waive the right of confrontation "when the State's entire case is to be presented by stipulation and the defendant does not present or preserve a defense ***, or where the stipulation includes a statement that the evidence is sufficient to convict the defendant." *Campbell*, 208 Ill. 2d at 218. We attached no other restrictions to defense counsel's authority to stipulate to the admission of evidence, and, except in those specified instances where the stipulation is tantamount to a guilty plea, we imposed no obligations on the trial court or counsel to admonish the defendant and ensure that the advisement is made a part of the record. Insofar as the appellate court held otherwise, the court erred.

The appellate court's holding is premised upon a single sentence from our opinion in *McClanahan* and the significance the appellate court attributed to the words "after consulting with his client" from our quotation of *Ramey* in *Campbell*. The appellate court has, in effect, adopted the defendant's position in *Campbell*, a construction we clearly rejected when we "decline[d] to read *McClanahan* so broadly." *Campbell*, 208 Ill. 2d at 212. The appellate court has taken our limited holding in *Camp-*

*bell*—applicable only "when the State's entire case is to be presented by stipulation and the defendant does not present or preserve a defense \*\*\*, or where the stipulation includes a statement that the evidence is sufficient to convict the defendant"—and has rendered a decision which would require, in every conceivable situation, that a defendant be advised of the implications and consequences of stipulation and that he approve on the record. Indeed, if we were to interpret the quoted passage from *Ramey* as the appellate court did, decisions regarding "what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike and what trial motions should be made" (see *Ramey*, 152 Ill. 2d at 54) would all, logically, require consultation with defendant, and his tacit approval, on the record. Since an evidentiary stipulation is, in effect, nothing more than an acknowledgment of what a witness would testify to if called, and a concomitant decision not to challenge the testimony the witness *would* give, a stipulation is not much different from a decision not to cross-examine. The notion that a defendant would have to approve every aspect of defense counsel's cross-examination—including "whether and how to conduct cross-examination"— highlights the impracticality of the procedure espoused by the appellate court. A representative system of litigation cannot function with those restrictions. We decline to impose them, and we hold that they are not constitutionally required.

As recently as our decision in *People v. Woods*, 214 Ill. 2d 455, 468 (2005), we reiterated that "courts look with favor upon stipulations" insofar as " ' "they tend to promote disposition of cases, simplification of issues, and the saving of expense to litigants." ' " As a matter of trial strategy, defense counsel might choose to stipulate to evidence in an effort to minimize the adverse impact it will have at trial. For example, counsel might, in certain

circumstances, decide to stipulate to a defendant's prior felony conviction in order to avoid disclosure of the name and nature of the prior felony conviction. See *People v. Walker*, 211 Ill. 2d 317, 341 (2004). In this instance, to contest the results of chemical testing, without a basis for doing so, would have simply highlighted testimony regarding the nature of the drug and would have unduly magnified its importance, when defendant was better served by focusing the jury's attention on the critical issue of whether defendant knowingly possessed the controlled substance. See *Woods*, 214 Ill. 2d at 474 (where the central issue is whether defendant possessed a controlled substance, defense counsel may reasonably decide to forgo the opportunity to cross-examine a forensic expert in order to focus on other theories of the defense); *People v. Banks*, 358 Ill. App. 3d 924, 926 (2005) ("counsel's decision to enter into the stipulation in order to focus on other aspects of the case, including challenging the recollection and credibility of the officers, was sound"); *People v. Scott*, 355 Ill. App. 3d 741, 745 (2005) (appellate court recognized that, as a matter of trial strategy, there was no reason to contest a lab report and distract the jury from defendant's defense); *United States v. Aptt*, 354 F.3d 1269, 1283 (10th Cir. 2004) ("it may be that defense counsel determined that the likelihood of successfully excluding the stipulated exhibits was small enough that it would be more advantageous for his client to bolster his credibility by expressing, in the presence of the jury, a willingness to let them see all of the evidence").

We note, in passing, that the stipulation in *Woods* would not pass muster under this appellate panel's holding, since there was no indication in the record that the defendant had been advised of the consequences of the stipulation. See *Woods*, 214 Ill. 2d at 461. As we stated in *Campbell*, "defense counsel may waive a defendant's right of confrontation as long as the defendant does not

object and the decision to stipulate is a matter of trial tactics and strategy." *Campbell*, 208 Ill. 2d at 217. Other than the limitations noted, where the stipulation is tantamount to a guilty plea, we did not qualify the foregoing principle in *Campbell*, and we see no need to do so now. As this court suggested in *Campbell*, it is only when counsel's stipulations render defendant's trial the " 'practical equivalent of a plea of guilty' " that a defendant must be "personally admonished about the stipulation and must personally agree to the stipulation." *Campbell*, 208 Ill. 2d at 218, 221, quoting *Brookhart v. Janis*, 384 U.S. 1, 7, 16 L. Ed. 2d 314, 319, 86 S. Ct. 1245, 1248 (1966).

Defense counsel in this case appears to have chosen, as a matter of trial strategy, to focus the jury's attention upon the critical issue of whether defendant knowingly possessed the cocaine found in her car. Without contradiction, Officer Hampton testified that he searched defendant's car and recovered 25 plastic bags, each containing a white substance that appeared to be cocaine. When confronted with that evidence, even the defendant acknowledged, "It looks like drugs." Under the circumstances, we fail to see any tactical advantage defendant might have obtained from extended forensic testimony about the analysis and nature of "off-white chunks" found individually packaged in 25 plastic bags. To the contrary, we believe such testimony would have been an unnecessary distraction for the jury.

Moreover, we note that defendant was present when the prosecutor, in his opening statement, mentioned "an agreement between the State and the defense counsel" regarding the testimony of people who handled and tested the drugs found in defendant's car. On four occasions, the prosecutor referred to stipulations concerning that evidence. Defendant did not voice any dissent or objection when those remarks were made. Defendant

was also present when defense counsel announced he had no objection to admission of the lab reports. Again, defendant did not object.

"[D]efense counsel may waive a defendant's right of confrontation as long as the defendant does not object and the decision to stipulate is a matter of trial tactics and strategy." *Campbell*, 208 Ill. 2d at 217. The criteria of *Campbell* are met in this case. Since counsel's stipulations did not render defendant's trial the " 'practical equivalent of a plea of guilty,' " there was no need for defendant to be "personally admonished about the stipulation" and "personally agree to the stipulation." See *Campbell*, 208 Ill. 2d at 218, 221, quoting *Brookhart*, 384 U.S. at 7, 16 L. Ed. 2d at 319, 86 S. Ct. at 1248. The critical issue of knowing possession remained, and indeed, that was the focus of trial. It was, therefore, unnecessary for either the court or counsel to admonish defendant about the implications and consequences of the stipulation; defendant's personal agreement to the stipulation on the record was not required.

Defendant obviously recognizes that the analysis of *Campbell* does not support the appellate court's result, as she repeatedly calls upon us to "overrule" *Campbell*. Defendant submits that *Campbell* is "constitutionally infirm because it fails to recognize that the right of confrontation is personal to a defendant" in every situation. Defendant offers a hypothetical which she apparently believes shows the error in *Campbell*'s analysis. Defendant suggests, under the holding in *Campbell*, "in a murder prosecution, twenty prosecution witnesses' statements could be presented *via* affidavit upon stipulation by the defense attorney, but as long as a sole witness testified in person, such a trial would not offend the accused's confrontation-clause right." Defendant's hypothetical suffers from an erroneous assumption that runs

throughout her brief, *i.e.*, that form matters more than substance, and that the *consistent* exercise of the right of confrontation, via cross-examination, is more important than the *effective* exercise of the right. Thus, in defendant's improbable hypothetical, if 20 witnesses have nothing to say about the critical issues in the case, or if what they have to say does not concern a controverted matter, there would be no point in cross-examining each witness, thereby diminishing the significance of the single witness whose testimony may be crucial.

"Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments *** and focusing *** at most on a few key issues." *Jones*, 463 U.S. at 751-52, 77 L. Ed. 2d at 994, 103 S. Ct. at 3313. That observation, made in reference to appellate advocacy, applies to trial practice as well, as we noted in *Woods*. *Woods*, 214 Ill. 2d at 474 (where the central issue is whether defendant possessed a controlled substance, defense counsel may reasonably decide to forgo the opportunity to cross-examine a forensic expert in order focus on other theories of the defense).

In sum, it is not necessary for either the court or counsel to admonish a defendant about the implications and consequences of a stipulation, and defendant's explicit agreement to the stipulation on the record is not required where, as here, (1) defense counsel's decision to stipulate appears to have been a matter of trial tactics and strategy and defendant does not object to counsel's decision, and (2) the State's entire case is not presented by stipulation, the defendant *does* present or preserve a defense, and the stipulation does not include a statement that the evidence is sufficient to convict. See *Campbell*, 208 Ill. 2d at 217-18.

For the foregoing reasons, the judgment of the appel-

late court is reversed and the judgment of the circuit court is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*