FIFTH DIVISION
March 31, 2006

No. 1-04-2047

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 03 CR 16996 |
| | ) | |
| LAWRENCE McNEAL, | ) | Honorable |
| | ) | Victoria A. Stewart, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE O'BRIEN delivered the opinion of the court:

Following a bench trial, defendant, Lawrence McNeal, was convicted of possession of a controlled substance with intent to deliver and sentenced to six years' imprisonment. The court also ordered defendant to pay $1,774, including a $1,000 drug assessment under section 411.2(a)(3) of the Illinois Controlled Substances Act (720 ILCS 570/411.2(a)(3) (West 2002)) and $5 toward the Spinal Cord Injury Paralysis Cure Research Trust Fund (Spinal Cord Fund) pursuant to section 5-9-1.1(c) of the Unified Code of Corrections (730 ILCS 5/5-9-1.1(c) (West 2002)).

On appeal, defendant contends that: (1) his conviction must be reversed and the cause remanded because nothing in the record indicates that he knowingly and intelligently waived his right of confrontation before his trial counsel entered into stipulations regarding the chain of custody and chemical composition of the recovered substances; (2) the court improperly assessed a $1,000 drug assessment without first determining his present or future ability to pay; (3) he is entitled to a $5-per-day credit toward the $1,000 drug assessment for the three days he spent in custody prior to sentencing; and (4) the statute mandating that persons convicted of drug-related

offenses be assessed $5 for deposit into the Spinal Cord Fund violates due process. We affirm defendant's conviction, credit him $15 toward the $1,000 drug assessment, and strike the $5 fee for the Spinal Cord Fund.

At trial, Officer O'Donnell testified that at approximately 9 p.m. on July 10, 2003, he was on duty as a surveillance officer in the area of 5656 South Ashland Avenue. Officer O'Donnell was parked on the west side of Ashland Avenue in an undercover vehicle when he saw defendant standing at a bus stop approximately 60 feet away.

Officer O'Donnell testified that he saw a pedestrian approach defendant and speak with him. Defendant then pointed the pedestrian to codefendants Sharlene Martin and Maurice Knowles, who were sitting on a door stoop. The pedestrian went to that location and had a conversation with Mr. Knowles. The pedestrian gave money to Mr. Knowles, who in return gave the pedestrian an item that he removed from a grey folded washcloth in his hand. The pedestrian then left the area.

Officer O'Donnell testified that he moved his car to improve his surveillance point and parked between defendant's position near the bus stop and Mr. Knowles' and Ms. Martin's position at the door stoop. Officer O'Donnell was now approximately 15 feet away from defendant, Mr. Knowles, and Ms. Martin. A second pedestrian approached defendant. Through the partially opened window of the surveillance vehicle, Officer O'Donnell heard the second pedestrian ask "where the blows were at." Defendant pointed to Mr. Knowles and Ms. Martin and said, "right there." The second pedestrian approached Mr. Knowles and Ms. Martin and engaged in a transaction similar to that of the first pedestrian. The second pedestrian left the

scene.

Officer O'Donnell testified that Mr. Knowles then unfolded the washcloth and handed some pink plastic bags to Ms. Martin, who stuffed the bags down the front of her pants. Mr. Knowles and Ms. Martin walked over to defendant and Mr. Knowles handed defendant some money. After defendant put the money in his pocket, all three of them crossed Ashland Avenue and began walking north together. Officer O'Donnell radioed enforcement officers and told the officers to stop them.

Officer O'Donnell testified that they were stopped, and that he approached Ms. Martin, who took out of her pants five pink-tinted plastic bags containing suspected white heroin. The bags were given to a female police officer and placed in a plastic bag and given inventory number 10167805. Officer O'Donnell also performed a custodial search of defendant and recovered $32.

The parties stipulated that if called to testify, Cotelia Fulcher, a forensic chemist for the Illinois State Police crime lab, would testify that she received five items inventoried under number 10167805 in a heat-sealed condition and that these items weighed a total of .7 grams. Ms. Fulcher would also testify that she tested one of those recovered items and that it was her opinion to a reasonable degree of scientific certainty that the item tested positive for the presence of heroin in the amount of .1 gram.

For the defense, Ms. Nally Junior testified on direct examination that at approximately 9 p.m. on July 10, 2003, she was standing outside, near her mother's restaurant at 5701 South Ashland Avenue. Defendant walked up to Ms. Junior and they stood together for approximately

No. 1-04-2047

10 to 15 minutes. Two officers then walked up, and one of the officers grabbed defendant and placed him up against a wall. The officer searched defendant, then grabbed him by the arm and took him away. On cross-examination, Ms. Junior admitted that she could not remember exactly what time these events occurred. Ms. Junior also agreed that she did not know what defendant had been doing before he approached her.

The trial court convicted defendant of possession of a controlled substance with intent to deliver and sentenced him to six years' imprisonment. The court also ordered defendant to pay $1,774, including a $1,000 drug assessment under section 411.2(a)(3) of the Illinois Controlled Substances Act (720 ILCS 570/411.2(a)(3) (West 2002)) and $5 toward the Spinal Cord Fund pursuant to section 5-9-1.1(c) of the Unified Code of Corrections (730 ILCS 5/5-9-1.1(c) (West 2002)). Defendant filed this timely appeal.

First, defendant contends that his federal and state constitutional confrontation rights were violated because the record lacks any indication that his attorney informed him of the legal consequences of entering a stipulation as to the composition of the recovered substances and as to the chain of custody.

In People v. Campbell, 208 Ill. 2d 203, 220-21 (2003), our supreme court held:

"[C]ounsel in a criminal case may waive his client's sixth amendment right of confrontation by stipulating to the admission of evidence as long as the defendant does not object to or dissent from his attorney's decision, and where the decision to stipulate is a matter of legitimate trial tactics or prudent trial strategy. Where the stipulation includes a statement that the evidence is sufficient to convict the defendant or where the State's

˘4˘

No. 1-04-2047

entire case is to be presented by stipulation, we find that a defendant must be personally admonished about the stipulation and must personally agree to the stipulation."

In People v. Phillips, 352 Ill. App. 3d 867, 871 (2004), a panel of the Third District interpreted this holding as requiring "some affirmative showing or indication by the defendant in the record that he or she did not object to or dissent from the attorney's decision to stipulate." In People v. Scott, 355 Ill. App. 3d 741 (2005), another panel of the Third District disagreed with Phillips and held that the record need not affirmatively show that the defendant was informed of and explicitly waived his confrontation rights. Several panels of this district have agreed with Scott. See People v. Orta, 361 Ill. App. 3d 342 (2005); People v. Foerster, 359 Ill. App. 3d 198 (2005); People v. Banks, 358 Ill. App. 3d 924 (2005).

In People v. Phillips, 217 Ill. 2d 270 (2005), our supreme court recently reversed the Phillips appellate court opinion and effectively validated the holdings of Scott, Orta, Foerster, and Banks. See also People v. Matthews, 362 Ill. App. 3d 953, 842 N.E.2d 150 (2005) (discussing the effect of the supreme court decision in Phillips.) The supreme court determined that the Phillips appellate court opinion had misinterpreted the holding of Campbell and held that, under Campbell:

" '[D]efense counsel may waive a defendant's right of confrontation as long as the defendant does not object and the decision to stipulate is a matter of trial tactics and strategy.' [Citation.] However, *** a defendant must personally waive the right of confrontation 'when the State's entire case is to be presented by stipulation and the defendant does not present or preserve a defense ***, or where the stipulation includes a

statement that the evidence is sufficient to convict the defendant.' [Citation.] We attached no other restrictions to defense counsel's authority to stipulate to the admission of evidence, and, except in those specified instances where the stipulation is tantamount to a guilty plea, we imposed no obligations on the trial court or counsel to admonish the defendant and ensure that the advisement is made a part of the record. Insofar as the appellate court held otherwise, the court erred." (Emphasis in original.) Phillips, 217 Ill. 2d at 283.

The supreme court concluded:

"In sum, it is not necessary for either the court or counsel to admonish a defendant about the implications and consequences of a stipulation, and defendant's explicit agreement to the stipulation on the record is not required where *** (1) defense counsel's decision to stipulate appears to have been a matter of trial tactics and strategy and defendant does not object to counsel's decision, and (2) the State's entire case is not presented by stipulation, the defendant does present or preserve a defense, and the stipulation does not include a statement that the evidence is sufficient to convict." (Emphasis in original.) Phillips, 217 Ill. 2d at 288.

In the present case, defendant did not object to the stipulation as to the chain of custody and chemical composition of the recovered items. The decision to stipulate to the forensic chemist's testimony was a matter of trial strategy, where the weight and nature of the recovered items were not contested but the defense challenged the State's ability to prove the remaining elements of the offense. Further, the stipulation did not indicate that the stipulated evidence was

No. 1-04-2047

sufficient to convict defendant nor did the State present its entire case through stipulation.

Therefore, the requirements of our supreme court opinions in Campbell and Phillips have been

satisfied and defendant's confrontation rights were not violated.

Next, defendant raises two claims regarding the $1,000 drug assessment he was ordered

to pay pursuant to section 411.2(a)(3) of the Illinois Controlled Substances Act (720 ILCS

570/411.2(a)(3) (West 2002)).  First, he contends the drug assessment really is a fine and should

not have been imposed without a finding of his ability to pay it as required by section 5-9-1(d) of

the Unified Code of Corrections (730 ILCS 5/5-9-1(d)(1) (West 2002)).  Section 5-9-1(d)(1)

states:

> "In determining the amount and method of payment of a fine, *** the court shall
>
> consider:
>
> (1) the financial resources and future ability of the offender to pay the fine[.]"
>
> 730 ILCS 5/5-9-1(d)(1) (West 2002).

Second, he contends that section 110-14 of the Code of Criminal Procedure of 1963 (725

ILCS 5/110-14 (West 2002)) entitles him to a $15 credit against the drug assessment because of

the three days he spent in presentence incarceration.  Section 110-14 states:

> "Any person incarcerated on a bailable offense who does not supply bail and
>
> against whom a fine is levied on conviction of such offense shall be allowed a credit of
>
> $5 for each day so incarcerated upon application of the defendant."  725 ILCS 5/110-14
>
> (West 2002).

Defendant failed to raise either of these issues at sentencing or during a motion to

˅7˅

No. 1-04-2047

reconsider sentence. However, the State admits that defendant was not properly admonished as to his right to file a motion to challenge his sentence and the court failed to admonish him that failure to raise any issues would result in their waiver. Accordingly, the State says that it does "not contest review of [the sentencing] issue[s]." Moreover, the normal rules of waiver do not apply to a sentence credit request. A defendant has the right to raise it for the first time on appeal. People v. Fort, 362 Ill. App. 3d 1, 4 (2005).

Finally, the rule of waiver is a limitation on the parties, and not on the reviewing court. In re Marriage of Kostusik, 361 Ill. App. 3d 103, 114 (2005). For all these reasons, we consider the sentencing issues on the merits.

In the present case, the State contends the drug assessment is something other than a fine, making incarceration credits and inquiries into ability to pay inapplicable. The State made these same arguments in People v. Fort, 362 Ill. App. 3d 1 (2005). In Fort, this court noted that several courts from other appellate districts had decided the credit issue and that they represent a "shutout against the State." Fort, 362 Ill. App. 3d at 5. Further, when amending the statute, the legislature had failed to change the results reached in those appellate decisions. Fort, 362 Ill. App. 3d at 8. Finally, the legislative history of section 411.2 indicated an intent that the drug assessment was to be a species of fine. Fort, 362 Ill. App. 3d at 7. For all these reasons, Fort held that the drug assessment is a fine for which the defendant is entitled to the $5 credit per each day incarcerated. Fort, 362 Ill. App. 3d at 8.

Fort further concluded that although the drug assessment is a kind of fine, there is no need to remand for an inquiry into the defendant's ability to pay, as the drug assessment is

mandatory and the legislature provided ways for it to be eliminated or reduced. Fort, 362 Ill. App. 3d at 8. Specifically, the legislature provided that defendants may reduce or suspend payment of the drug assessment by entering community service or entering an approved substance abuse intervention or treatment program. 720 ILCS 570/411.2(e), (f) (West 2002).

In accordance with Fort, we hold that defendant's $1,000 drug assessment is a fine for which he is entitled to $5-per-day credit for the three days he was incarcerated. Therefore, defendant is entitled to a $15 credit against the $1,000 drug assessment. Also in accordance with Fort, we decline defendant's request to remand for an inquiry into his ability to pay.

Next, defendant contends that his due process rights were violated when the trial court ordered him to pay a $5 fee for deposit into the Spinal Cord Fund pursuant to section 5-9-1.1 of the Unified Code of Corrections. 730 ILCS 5/5-9-1.1(a)(c) (West 2002)). Section 5-9-1.1 states:

> "(a) When a person has been adjudged guilty of a drug related offense involving possession or delivery of cannabis or possession or delivery of a controlled substance *** a fine shall be levied by the court at not less than the full street value of the cannabis or controlled substances seized.
>
> * * *
>
> (c) In addition to any penalty imposed under subsection (a) of this Section, a fee of $5 shall be assessed by the court, the proceeds of which shall be collected by the Circuit Clerk and remitted to the State Treasurer *** for deposit into the [Spinal Cord Fund]. This additional fee of $5 shall not be considered a part of the fine for purposes of any reduction in the fine for time served either before or after sentencing." 730 ILCS5/5-

No. 1-04-2047

9-1.1 (West 2002).

Defendant contends that collecting the $5 Spinal Cord Fund fee from a person convicted of a drug-related offense is an arbitrary and unreasonable exercise of the State's police power. Defendant argues that there is no rational relationship between the sale of a controlled substance and the public interest that induced the legislature to create the Spinal Cord Fund.

All statutes are presumed to be constitutional, and the party challenging the statute's validity bears the burden of clearly demonstrating a constitutional violation. Fort, 362 Ill. App. 3d at 8. If reasonably possible, the court must construe the statute so as to affirm its constitutionality. Fort, 362 Ill. App. 3d at 8. Whether a statute is constitutional is a question of law that is reviewed de novo. Fort, 362 Ill. App. 3d at 8. Where the statute does not affect a fundamental constitutional right, we ask whether the statute bears a reasonable relationship to the public interest intended to be protected and whether the means adopted are a reasonable method of accomplishing the desired objective. Fort, 362 Ill. App. 3d at 8-9.

This court has examined the statute at issue and found it to be unconstitutional. People v. Rodriguez, 362 Ill. App. 3d 44 (2005). The court stated:

"While driving under the influence of a controlled substance arguably bears a rational relationship to spinal cord research, we cannot say that the simple possession of a controlled substance, an offense that does not involve or require the use of a motor vehicle, is reasonably related to spinal cord research. Furthermore, the parties have not called to our attention any other statutes that impose a fee earmarked for the [Spinal Cord Fund] upon defendants whose crimes did not involve motor vehicles. Accordingly, we

˅10˅

No. 1-04-2047

find the relationship between possession of a controlled substance and the [Spinal Cord Fund] simply too attenuated to survive defendant's due process challenge." Rodriguez, 362 Ill. App. 3d at 54.  In accord, Fort, 362 Ill. App. 3d at 9-10.

The instant case involves possession of a controlled substance with intent to deliver, not just mere possession as in Rodriguez and Fort.  However, the analysis remains the same, as the offense of possession of a controlled substance with intent to deliver does not require the use of a motor vehicle.  Accordingly, we adhere to Rodriguez and Fort and hold that the imposition of the $5 fee violated defendant's substantive due process rights.

For the foregoing reasons, we affirm defendant's conviction, we amend the costs and fees order to reflect a credit of $15 against the $1,000 "Assessment Controlled Substance," and we strike from the order the $5 fee for the "Trauma Fund Spinal Cord."

Affirmed as modified.

GALLAGHER, P.J., and NEVILLE, J., concur.