NO. 4-06-0026     Filed 4/19/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Cumberland County |
| MARK J. LASHMET, | ) | No. 05CF24 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Teresa K. Righter, |
| | ) | Judge Presiding. |

_____

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In February 2005, the State charged defendant, Mark J. Lashmet, with solicitation of murder for hire in that defendant (while he was incarcerated at the Cumberland County jail), with intent that first degree murder be committed, hired David J. Marr to murder Jimmie L. Cummins (720 ILCS 5/8-1.2 (West 2004)).  In January 2006, defendant filed a motion to suppress incriminating statements he made to Marr while Marr was posing as a fellow inmate and acting on the State's behalf.  Following a hearing later in January 2006, the trial court granted defendant's motion.

The State appeals, arguing that the trial court erred by granting defendant's motion to suppress.  We agree and reverse and remand for further proceedings.

I. BACKGROUND

Defendant's January 2006 motion sought to suppress his incriminating statements to Marr on the ground that the State's conduct violated his fifth-amendment right against self-incrimination. Specifically, defendant's motion alleged as follows: (1) sometime prior to late December 2004, the State had charged him with "various felony offenses," regarding which he was represented by counsel; (2) on December 29, 2004, defendant, who was an inmate at the Cumberland County jail, made certain incriminating statements to Marr, who was participating in an undercover police operation; and (3) Marr did not give defendant Miranda warnings (see Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)) prior to asking him questions. Attached to his motion was a memorandum in support thereof. The memorandum indicated, in part, that in November 2004, defendant was incarcerated on charges of "aggravated battery, attempted murder [of Cummins,] and violation of bail bond," regarding which he was represented by counsel.

At the hearing on defendant's motion to suppress, which was held later in January 2006, the parties stipulated to the following facts. In mid-November 2004, defendant was incarcerated in the Cumberland County jail. On November 17, 2004, a deputy asked defendant to answer questions. After answering some preliminary questions, defendant informed the deputy that he did not want to answer any further questions. Defendant did not

waive his <u>Miranda</u> rights after that date.

On December 29, 2004, police authorities placed Marr in a cell with defendant. Marr, who was participating in an undercover police operation to obtain information from defendant, was wearing a recording device. Defendant sat in a chair while Marr asked him a series of questions for approximately 45 minutes. During the meeting, Marr sometimes stood over defendant or stood within whispering distance. The State had not yet charged defendant with solicitation of murder for hire, and he did not then know that the State was investigating his involvement in solicitation to commit murder.

If called as a witness, Marr would testify that prior to December 29, 2004, he had been incarcerated with defendant at the Cumberland County jail. During that time, defendant offered to pay Marr to kill Cummins. As part of their agreement, defendant posted bail for Marr, and Marr was released from jail. If called to testify, defendant would deny Marr's allegations.

The trial court also admitted as a joint exhibit a transcript of the December 29, 2004, jailhouse conversation between defendant and Marr. The transcript shows that the conversation began with small talk about why Marr was purportedly back in jail (for driving on a revoked license) and how he could bail out. At some point during the conversation, the following colloquy took place.

"[MARR]:  I can't do it.  I thought I could but I can't do it.  You know?  I've never shot nobody or nothing.  I can't even kill myself, let alone (inaudible).

[DEFENDANT]:  (Inaudible.)

[MARR]:  You (Inaudible) for sure.  You got to make sure you want it done.

[DEFENDANT]:  I want it done.

[MARR]:  What about the old lady?  You want her dead too or just him?

[DEFENDANT]:  Just him."

After more small talk, the following colloquy occurred.

"[MARR]:  I'm scared as hell.  You know?  The only way it can happen, you got to get, you know, I can't say 'Hey, do it, man; I'll owe you.' you know?  (Inaudible.)

[DEFENDANT]:  (Inaudible.)

[MARR]:  Says as soon as I got the money and I got the picture ...

[DEFENDANT]:  You still got that paper I gave you with all that information on it?

[MARR]:  Yeah ...

[DEFENDANT]:  I'm scared, man.  I lay there in bed thinking--I wonder--don't take

this wrong--are you going to get your ass off and put me away?  (Inaudible.)  I don't know.  I don't know, Dave.  I don't know.

    [MARR]:  I know.  I know.  Yeah, I understand that.

    [DEFENDANT]:  (Inaudible) my life...

    [MARR]:  (Inaudible.)

    [DEFENDANT]:  I want him dead.

    [MARR]:  You want him dead.

    [DEFENDANT]:  I want him dead."

After considering the evidence and counsel's arguments, the trial court granted defendant's motion to suppress.  In so doing, the court (1) agreed with defendant that the case was directly on point with the Fifth District's decision in People v. Perkins, 248 Ill. App. 3d 762, 618 N.E.2d 1275 (1993) (Perkins II) and (2) found that defendant's fifth-amendment rights were violated because "he was already represented by counsel in other matters that were pending, and from his assertion to [the deputy] that he didn't want to speak any longer with the officers or answer questions with regards to the issues at hand."

This appeal followed.

## II. ANALYSIS

### A. Standard of Review

When ruling on a motion to suppress evidence, the trial

court often must choose between competing versions of fact and weigh the credibility of witnesses. We thus defer to the trial court's factual findings unless we determine that those findings are manifestly erroneous. People v. Roberson, 367 Ill. App. 3d 193, 195, 854 N.E.2d 317, 320 (2006). A "'manifest error'" is one that is "clearly evident, plain, and indisputable." People v. Ruiz, 177 Ill. 2d 368, 384-85, 686 N.E.2d 574, 582 (1997). Although we defer to the trial court on questions of fact, we review de novo whether the law requires suppression of the evidence under those facts. Roberson, 367 Ill. App. 3d at 195, 854 N.E.2d at 320.

### B. Defendant's Fifth-Amendment Rights

The State first argues that the trial court erred by granting defendant's motion to suppress on the ground that defendant's fifth-amendment rights were violated. We agree.

In Miranda, 384 U.S. at 444-45, 16 L. Ed. 2d at 706-07, 86 S. Ct. at 1612, the United States Supreme Court held that the fifth-amendment privilege against self-incrimination prohibits admitting in evidence statements given by a suspect during custodial interrogation without a prior warning. The Miranda warnings

> "were meant to preserve the fifth[-]amendment privilege against self-incrimination during incommunicado interrogation of individuals in

a police-dominated atmosphere. Courts view that atmosphere as generating inherently compelling pressures that work to undermine the individual's will to resist and to compel the person to speak where the person would not otherwise do so freely." People v. Manning, 182 Ill. 2d 193, 206, 695 N.E.2d 423, 429 (1998).

However, in Illinois v. Perkins, 496 U.S. 292, 296, 110 L. Ed. 2d 243, 250-51, 110 S. Ct. 2394, 2397 (1990) (Perkins I), the United States Supreme Court held that Miranda is not implicated during conversations between suspects and undercover agents. The Supreme Court reasoned that the concerns underlying Miranda are not implicated in such circumstances because "[t]he essential ingredients of a 'police-dominated atmosphere' and compulsion are not present when an incarcerated person speaks freely to someone whom he believes to be a fellow inmate." Perkins I, 496 U.S. at 296, 110 L. Ed. 2d at 251, 110 S. Ct. at 2397. The Court further explained as follows:

"When a suspect considers himself in the company of cellmates and not officers, the coercive atmosphere is lacking. [Citation.] *** There is no empirical basis for the assumption that a suspect speaking to those

- 7 -

whom he assumes are not officers will feel

compelled to speak by the fear of reprisal

for remaining silent or in the hope of more

lenient treatment should he confess."

Perkins I, 496 U.S. at 296-97, 110 L. Ed. 2d

at 251, 110 S. Ct. at 2397.

See also Manning, 182 Ill. 2d at 206, 695 N.E.2d at 429 ("Ploys to mislead a suspect or lull the suspect into a false sense of security--that do not rise to the level of compulsion or coercion to speak--are not within Miranda's concerns").

In this case, defendant freely chose to speak with Marr, who was posing as a fellow inmate on the State's behalf. The record shows no ploys to mislead defendant that rose to the level of compulsion or coercion to speak. Thus, in accordance with Perkins I, we conclude that no Miranda warnings were required prior to Marr's jailhouse conversation with defendant. See People v. Easley, 148 Ill. 2d 281, 312, 592 N.E.2d 1036, 1049 (1992) (in which our supreme court concluded that in light of the Supreme Court's decision in Perkins I, an inmate who was working undercover for the Department of Corrections was under no obligation to give the defendant Miranda warnings prior to questioning him).

In so concluding, we note that defendant's prior invocation of his right to remain silent did not require that

- 8 -

defendant validly waive that right before Marr questioned him. In that regard, we agree with Professor LaFave, who wrote the following:

> "While a concurring opinion [by Justice Brennan] in Perkins [I] asserted that if 'respondent had invoked either [his right to remain silent or his right to counsel], the inquiry would focus on whether he subsequently waived the particular right,' that contention is inconsistent with the analysis of the Perkins [I] majority ***."
> W. LaFave, J. Israel & N. King, Criminal Procedure §6.7(c), at 178-79 (2007).

Critical to that analysis was the Supreme Court's reasoning that, absent a custodial interrogation, no violation of a defendant's fifth-amendment Miranda rights can occur and thus "'there would be no occasion to determine whether there had been a valid waiver' of those rights." State v. Hall, 204 Ariz. 442, 452, 65 P. 3d 90, 100 (2003), quoting Edwards v. Arizona, 451 U.S. 477, 486, 68 L. Ed. 2d 378, 387, 101 S. Ct. 1880, 1885 (1981). In this case, defendant's jailhouse conversation with Marr, whom defendant believed to be a fellow inmate, clearly did not constitute a custodial interrogation. See Perkins I, 496 U.S. at 296-97, 110 L. Ed. 2d at 251, 110 S. Ct. at 2397 ("When a suspect

- 9 -

considers himself in the company of cellmates and not officers, the coercive atmosphere is lacking").  Thus, whether defendant validly waived his right to remain silent is of no moment because defendant's Miranda rights simply were not implicated.  To the extent Perkins II (which involved the Fifth District's decision following remand in Perkins I) suggests otherwise, we disagree with it.

We further note that although the trial court here recognized the Supreme Court's decision in Perkins I, it accepted defendant's argument (which defendant now appears to have abandoned on appeal) that the Supreme Court's holding was inapplicable because defendant had previously invoked his fifth-amendment rights.  Both the court and defendant relied on the Fifth District's decision in Perkins II, in which the defendant argued for the first time that he had previously asserted his fifth-amendment right to counsel.  The Fifth District framed the question on appeal as follows:  "Where a suspect has asserted his fifth[-]amendment right to counsel, can he be questioned by undercover agents on a separate, unrelated, and uncharged offense while in jail, without the presence of an attorney, and without an opportunity to waive his right to counsel?"  Perkins II, 248 Ill. App. 3d at 767-68, 618 N.E.2d at 1279.  The Fifth District answered the question, "No," and further concluded that (1) the defendant had not validly waived his right to counsel prior to the ques-

tioning by the undercover agent and (2) the authorities' actions constituted custodial interrogation. Perkins II, 248 Ill. App. 3d at 770, 618 N.E.2d at 1281.

Perkins II is inapposite. Contrary to the trial court's finding, nothing in the record shows that defendant invoked his fifth-amendment right to counsel. The parties' stipulation of facts indicates that on November 17, 2004, after answering some preliminary questions, defendant informed the deputy that he did not want to answer any further questions. Thus, defendant invoked his right to remain silent, not his right to counsel. Both the court and defendant seem to have equated the fact that defendant was being represented by counsel on other charges (a fact that was not set forth in the parties' stipulation) with defendant's invoking his fifth-amendment right to counsel. However, even accepting that defendant was being represented on other charges, it is well settled that a defendant's invocation of his offense-specific sixth-amendment right to counsel does not invoke his fifth-amendment right to counsel. McNeil v. Wisconsin, 501 U.S. 171, 178-79, 115 L. Ed. 2d 158, 168-69, 111 S. Ct. 2204, 2209 (1991).

Accordingly, we conclude that the trial court erred by granting defendant's motion to suppress his statements to Marr on the ground that defendant's fifth-amendment rights were violated.

C. Defendant's Sixth-Amendment Rights

As noted above, defendant seems to have abandoned on appeal his fifth-amendment argument. Instead, he argues for the first time on appeal that the trial court's granting of his motion to suppress should be affirmed because his statements to Marr were elicited in violation of his sixth-amendment right to counsel. Specifically, he contends that (1) at some point after he invoked his right to remain silent in mid-November 2004, he was represented by counsel on other charges, including attempt (first degree murder) of Cummins; (2) he was "awaiting trial in Cumberland County case No. 04-CF-114," in which he was charged with attempt (first degree murder) of Cummins; (3) his sixth-amendment right to counsel was thus invoked at the time of his jailhouse conversation with Marr; (4) evidence relating to defendant's alleged solicitation of murder for hire was relevant to defendant's intent or motive relating to the attempt (first degree murder) charge; and (5) the attempt (first degree murder) charge was so closely related to the then uncharged offense of solicitation of murder for hire that his sixth-amendment right to counsel attached to the uncharged offense. In response, the State argues that defendant has forfeited this argument on appeal by failing to raise it in the trial court. We agree with the State.

"It is quite established that 'the appellee may urge any point in support of the judgment on appeal, even though not

- 12 -

directly ruled on by the trial court, <u>so long as the factual basis for such point was before the trial court</u>.'"  (Emphasis added.)  <u>Beahringer v. Page</u>, 204 Ill. 2d 363, 370, 789 N.E.2d 1216, 1222 (2003), quoting <u>Shaw v. Lorenz</u>, 42 Ill. 2d 246, 248, 246 N.E.2d 285, 287 (1969).

In this case, the factual basis for defendant's sixth-amendment argument was not before the trial court.  Defendant did not include this argument in his motion to suppress, his memorandum in support thereof, or his argument at the hearing on his motion.  In addition, defendant did not present <u>any</u> evidence (1) relating to the attempt (first degree murder) charge in Cumberland County case No. 04-CF-114 or (2) as to how that charge may have been closely related to the subsequent charge of solicitation of murder for hire.  Nor did the trial court have before it the charging instrument setting forth the attempt (first degree murder) charge.  Because the issue of whether defendant's statements to Marr were elicited in violation of his sixth-amendment right to counsel involved a fact-intensive determination and the factual basis for defendant's sixth-amendment argument was not before the trial court, we conclude that defendant has forfeited this argument on appeal.

### III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment and remand for further proceedings.

- 13 -

Reversed and remanded.

McCULLOUGH and TURNER, JJ., concur.