NO. 4-06-0228     Filed 10/11/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| FORREST D. CHAPMAN III | ) | No. 05CF104 |
| Defendant-Appellant | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

Following a January 2006 bench trial, the trial court convicted defendant, Forrest D. Chapman III, of possession of a controlled substance (less than 15 grams of a substance containing cocaine) and possession of cannabis (more than 30 but less than 500 grams) (720 ILCS 570/402(c) (West 2004); 720 ILCS 550/4(d) (West 2004)). The court sentenced him to two years' probation and six weekends in jail.

Defendant appeals, arguing that (1) the trial court erred by denying his motion to suppress the evidence against him because police violated the "knock and announce" rule when they executed a search warrant at his residence and (2) his stipulated bench trial was tantamount to a guilty-plea proceeding, thus requiring that he be given the admonishments set forth in Supreme Court Rule 402 (177 Ill. 2d R. 402). We affirm.

## I. BACKGROUND

### A. The Motion To Suppress Evidence

At the September 2005 hearing on defendant's motion to suppress evidence, the evidence showed that around 3:30 a.m. on May 6, 2005, police executed a search warrant at 610 West Grant in Pontiac, which was a house that belonged to defendant's longtime girlfriend, Julie Serna. Defendant, Julie, Julie's daughter, Elizabeth Serna, Elizabeth's boyfriend, Daris Woods, and Julie's son, Chase, were present when the search warrant was executed.

Pontiac police sergeant Dan Davis testified that he was one of the officers who executed the search warrant at Julie's house on May 6, 2005. Davis detonated a defense-technology (DEF-TEC) device in the backyard by throwing it over the backyard fence. Davis explained that a DEF-TEC device produces a "very loud report" and gives off a very bright light. It is "a tool used by many tactical teams when executing search warrants." The purpose of the device is to alert anyone in the house or the area that police are executing a search warrant. Davis would not classify the device as a bomb because it is primarily used for noise and does not destroy anything.

Davis also testified that no lights were on at the house when he detonated the DEF-TEC device. After he threw it into the backyard, he joined seven other officers at the north side of the house. He was 10 feet from those officers when the device exploded about three seconds later. After another four or

five seconds, Davis heard police officer Adam Fulkerson yell in a loud voice, "Police, search warrant." Although Davis did not see Fulkerson knock on the door, he heard knocking. Davis could not recall specifically how many times he heard Fulkerson announce their presence.

Davis further testified that he heard three knocks on the door immediately after he heard Fulkerson yell, "police, search warrant," and five or six seconds later, the police entered the house. Davis believed that they entered through the door without using a battering ram. He heard one of the officers say that the door was unlocked. Davis did not know which officer discovered that the door was unlocked.

Daris Woods testified that he was at Julie's house when the police executed the search warrant. Woods had arrived at the house between 10 p.m. and 11 p.m. the night before. He had been watching television in the living room until the early morning hours of May 6, 2005. However, he had turned off the television and was giving Elizabeth a back massage when they heard an explosion toward the front of the house. He asked Elizabeth what the noise was, and she said she did not know. A few seconds later, the police came through the front door into the living room. Woods did not hear the police say anything prior to coming into the house. After the door opened, the police were screaming for everyone to get on the ground. Woods heard Elizabeth say, "Oh, shit."

Woods acknowledged that in 2004, he was convicted of

two counts of unlawful delivery of cannabis and the felony offense of unlawful possession of cannabis. Despite having been punished for those crimes, he said he would not lie in court.

Elizabeth testified that during the early morning of May 6, 2005, she was lying on her stomach in the living room with Woods. She heard a loud bang that she thought came from the back of the house. Woods asked her what the noise was, and she said she did not know. The police then came through the door, saying "Pontiac PD." She did not hear anything besides the explosion before they entered. The police did not notice that she was present until she said, "Oh, shit." At that point, they shined a flashlight on her and said, "Pontiac PD, get down on the ground."

Elizabeth acknowledged that Julie and defendant, whom she referred to as her stepfather, were charged with crimes in this case and could go to prison. She stated that she would not lie under oath even though Julie and defendant could go to prison.

Julie testified that she had lived with defendant for many years. When she got home in the early morning hours of May 6, 2005, she saw Elizabeth and Woods watching television in the living room. She then went upstairs to her bedroom. Shortly thereafter, defendant came home and joined her in the bedroom, where they engaged in sex. The bedroom door was closed, and one lamp was turned on. Even though the window was covered with a bedsheet, someone standing outside the house would be able to see that a light was on. While she and defendant were having sex,

defendant thought he heard something.  Defendant got up and went to the window but could not see anything and went back to bed.  Then Julie heard a "big loud boom" and within seconds, she heard the front door being rammed open and the words, "Pontiac PD, get on the ground."  She wrapped herself in a blanket and laid on the ground and waited for them to come upstairs.  She did not hear anyone yelling prior to the officers' entry into the house.  She had consumed four or five beers before returning home that evening over a six- to seven-hour time period.

Defendant testified that before he heard the explosion that night, he thought he had heard something else.  He went to the window that faced the backyard and looked outside.  He did not see anything so he let go of the curtain and then immediately heard the explosion.  A split second, or maybe a second, passed and then he heard another boom, which was the sound of "something hitting the front door very hard."  He did not hear anyone say anything before the front door opened.  Defendant estimated that the distance from the front door to his upstairs bedroom was approximately 25 feet if you went on foot and 15 feet "as the crow flies."  Defendant further testified as follows:

> "Nothing was said.  What--The first explosion
> went off, the bomb, whatever, the grenade or
> device; and then the front door, something
> hit the front door very hard, very loud; and
> then the next thing I heard was [']you didn't
> have to do that.[']  And then I heard the

police say to Elizabeth, [']on the ground,

quit resisting.[']"

Defendant later clarified that the first thing he heard after the officers came in was Elizabeth saying, "[Y]ou didn't have to do that." He did not hear her say, "Oh, shit." Defendant then heard footsteps coming through the house up to the bedroom. He could not recall what the police said. They came into the bedroom, and he just stood there.

Julie, defendant, and Woods all testified that the front door to the house did not work properly and could be opened without turning the doorknob.

After considering this evidence and arguments of counsel, the trial court denied defendant's motion to suppress. The court specifically found that Davis was a credible witness. In announcing its ruling from the bench, the court explained as follows:

"In assessing the credibility of [Davis], you know, he didn't say there was a knock on the door. He didn't see where the knock was. I found him to be credible. This is his job. They were carrying out an operation, and he was specific with where he was when he was down to seconds[,] which I think is impor-tant.

[Woods], I just don't find him to be a credible witness. He didn't, he didn't look

confident in what he was saying.  He didn't,

I just didn't find him to be that credible,

and he does have a substantial interest in

the outcome of the litigation or the hearing

I should say.  So I didn't find him credible.

Another thing that really kind of from a

factual standpoint, [defendant], his testi-

mony was pretty inconsistent; and it also

supports the fact that people in different

rooms in the house are going to hear differ-

ent things.  There was this distraction de-

vice going on.  I think everybody agrees that

that happened.  The question is what happened

after that.

From a factual standpoint, I believe

there was [sic] knocks, announcements, entry.

Happened very fast.  It wasn't a half an hour

process where everybody has time to sit there

and think, oh, there were knocks on the door

and we wait 15 minutes and we heard more

knocks on the door.  In the meantime, the

distraction device had gone off."

The trial court further pointed out that defendant

testified to hearing a different statement by Elizabeth at the

time the police entered.  Elizabeth and Woods testified she said,

"Oh, shit."  However, defendant said the first thing he heard was

Elizabeth saying, "[Y]ou didn't have to do that." The court found defendant not credible on that point, because "[h]e didn't know what happened down there."

The trial court further noted that Elizabeth did not look the court in the eye when she took her oath. The court explained, "The first thing that tells me is this person has something to hide; and coupled with the statement of [']oh, shit['] when there's police barging in the house as opposed to [']what in the world is going on,['] it just seems like a strange reaction."

The court further explained, "I just think that the witnesses[,] while there are four of them[,] there are some inconsistencies in their stories that lead me to question the credibility, and they have reasons to lie." The court found that defendant had not met his burden of proof by a preponderance of the evidence and denied defendant's motion to suppress.

B. Defendant's Bench Trial

At defendant's January 2006 bench trial, the parties asked (1) for a decision based on stipulated facts and (2) that the trial court take judicial notice of the testimony presented at the September 2005 suppression hearing. The prosecutor then stated that the evidence produced at trial would be as follows: (1) on May 4, 2005, officers from the Pontiac police department apprehended bags of trash outside Julie's house; (2) on May 5, 2005, the officers took the bags to a secured location and searched them; (3) in one bag, the officers found a plant stem

that was identified and field tested as cannabis material; (4) they also found an empty plastic sandwich bag tied off at the corner, as is "commonly [done in] drug packaging"; (5) the officers found mail addressed to defendant at Julie's address; (6) in another bag, they found 1.8 grams of cannabis material and mail addressed to defendant at Julie's address; and (7) in another bag, the officers found remnants of a cannabis cigarette and mail addressed to Julie.

Later that day, the officers obtained a search warrant for Julie's house. At 3:30 a.m. on May 6, 2005, the Pontiac Tactical Response Team (TRT) unit executed the search warrant. Five persons were in the house at the time, including defendant, Julie, Elizabeth, Chase, and Woods. After defendant, Julie, Elizabeth, and Woods were taken to jail, the police used canines to search the house.

In the kitchen, officers found (1) a plastic bag, the contents of which tested positive for cannabis; (2) a tan pipe, commonly referred to as a "bowl," that contained black residue; (3) another plastic bag (on top of the refrigerator) containing a green leafy substance that tested positive for cannabis; and (4) an electronic scale that was commonly used to weigh drugs.

In the living room, officers found a clock containing an air hose connector with black residue on the end of it that smelled like burned cannabis. In an upstairs bedroom, officers found (1) a plate containing a white powder substance that field tested positive for cocaine, (2) a plastic container with white

- 9 -

powder residue that field tested positive for cocaine, (3) a plastic bag with a knot tied in it, (4) three plastic straws, and (5) a plastic bag containing a white powdery substance that field tested positive for cocaine. Between the mattress and the box springs, the officers found a plastic bag containing a green leafy substance that tested positive for cannabis.

In the office, officers found two "sockets" with part of a Brillo pad in each socket's end. Such a device is commonly employed for drug use. In the garage, officers found (1) another socket containing a Brillo pad and (2) inside a toolbox, a cigarette box containing a plastic bag with a green leafy substance that field tested positive for cannabis.

The materials were sent to the Illinois State Crime Lab, where it was determined that approximately 61 grams of cannabis had been seized from the house. The residue from a plastic pen tested positive for cocaine. The crime lab did not test any other suspected cocaine residue because it was the crime lab's policy not to perform further testing unless the additional amount would raise the charge to a higher class felony.

After hearing the stipulated evidence, the trial court heard arguments of counsel. Defense counsel argued as follows:

> "It would be difficult for me to make any
> argument that there wasn't sufficient proof
> of residence on behalf of this particular
> [d]efendant. It would also be difficult for
> me to argue the issue of possession when it

comes to the cannabis.  ***  However, Judge, as you are aware, the information charges that he knowingly possessed the contraband, the illegal substance.  There was some evidence that was seized that contained or that had the presence of a white residue on it.  However, that substance was not tested as far as some of the pieces of evidence.  There was a plate.  There was a [B]aggie.

The only thing that the State had to, the only thing that the State had analyzed was the inside of a barrel of an ink pen where that contained a white residue.  That was later a residue that was tested at the crime lab, and that established the presence of cocaine.  None of the other items were tested.

It's our position, Judge, that the fact that there was a residue inside of an ink pen is not sufficient evidence to establish that my client knowingly possessed cocaine.  Of course, there is the felony amount of cannabis.  And like I say, that was an appreciable amount.  61 grams.  However, there was no weight as to the residue that was found on the inside of the ink pen.

Okay. There was [sic] no statements from my client that established his knowledge of the presence of that residue. He never made any statements to the police that, yeah, I knew there was cocaine on the inside of this ink pen. There's nothing to indicate where it was found that would add to his knowledge of the presence of a substance inside of an ink pen.

Okay. I think it's commonly known that an ink pen is or a barrel or a straw is sometimes used to ingest the controlled substance. However, the State, that does not relieve the burden of the State to prove that he was aware of it, aware of its presence. Finding a [B]aggie of cocaine or finding a [B]aggie of cannabis that weighed approximately 28 grams under his mattress is one thing, and it's very difficult to argue that he didn't know it was there. But finding a residue inside of an ink pen that has no weight from the crime lab or no weight indicated from any police agency or any evidence from the State is a different circumstance.

And I don't feel that that is enough evidence to find my client guilty of know-

ingly possessing a controlled substance, the fact that there was a white powdery substance that was located inside the barrel of an ink pen."

The trial court found that it was "more or less conceded" that defendant was guilty of possession of cannabis. The court also found that "ample evidence" was present upon which to find defendant guilty of possession of cocaine. In so finding, the court noted that if the ink pen was the only piece of evidence found containing residue, defense counsel's argument may have been more convincing. However, given that the pen was found inside the house, as opposed to outside the home in the yard, and that other significant residue was found in other areas of the house, the evidence supported its finding that defendant knowingly possessed cocaine.

Following a March 2006 hearing, the trial court sentenced defendant as stated. Defendant filed a motion to reconsider, raising the same argument set forth in his motion to suppress. The court denied defendant's motion to reconsider, stating that it still believed its factual findings and ruling on the motion were correct.

This appeal followed.

## II. ANALYSIS

### A. The Trial Court's Denial of Defendant's Motion To Suppress

Defendant first argues that the trial court erred by denying his motion to suppress the evidence obtained during the

search of Julie's house. Specifically, he contends that the police circumvented the knock-and-announce rule by using the DEF-TEC device, which prevented the occupants of the house from hearing the police announce their presence. We disagree.

In People v. Lashmet, 372 Ill. App. 3d 1037, 1040, 868 N.E.2d 368, 371 (2007), this court discussed the standard of review for a trial court's ruling on a motion to suppress evidence as follows:

"When ruling on a motion to suppress evidence, the trial court often must choose between competing versions of fact and weigh the credibility of witnesses. We thus defer to the trial court's factual findings unless we determine that those findings are manifestly erroneous."

We further explained that an error is "manifest" when it is "'clearly evident, plain, and indisputable.'" Lashmet, 372 Ill. App. 3d at 1040, 868 N.E.2d at 371, quoting People v. Ruiz, 177 Ill. 2d 368, 384-85, 686 N.E.2d 574, 582 (1997). "Although we defer to the trial court on questions of fact, we review de novo whether the law requires suppression of the evidence under those facts." Lashmet, 372 Ill. App. 3d at 1040, 868 N.E.2d at 371.

In denying defendant's motion to suppress evidence, the trial court stated that it found Davis's testimony to be more credible than the testimony of defendant's witnesses, all of whom were inside the house when the police executed the warrant.

- 14 -

Specifically, the court noted that (1) discrepancies existed in the defense witnesses' testimony, (2) some defense witnesses did not come across as truthful, and (3) they all had reasons to lie. The court also noted that some of the defense witnesses had been in the upstairs of the residence and may have been distracted. Based on the record, we conclude that the court's finding that the police knocked and announced their authority before entering was not against the manifest weight of the evidence.

Moreover, as a matter of law, violations of the knock-and-announce rule, even if proved, will not automatically result in the exclusion of evidence obtained as a result of the search. Hudson v. Michigan, 547 U.S. __, 165 L. Ed. 2d 56, 126 S. Ct. 2159 (2006). In Hudson, the Court held that the exclusionary rule is unwarranted under the fourth amendment (U.S. Const., amend. IV) for violations for the knock-and-announce rule. Hudson, 547 U.S. at __, 165 L. Ed. 2d at 71, 126 S. Ct. at 2170. Given the recent decision of the Supreme Court of Illinois in People v. Caballes, 221 Ill. 2d 282, 313, 851 N.E.2d 26, 44-45 (2006), reaffirming that court's commitment to the limited-lockstep analysis regarding decisions of the United States Supreme Court applying the search-and-seizure provisions of the fourth amendment, we believe the Supreme Court of Illinois would likely adhere to Hudson. Therefore, even if the trial court had found that the police failed to comply with the knock-and-announce rule, excluding the evidence obtained in the search would not necessarily have been required. In light of our conclusion

that the trial court's decision to deny the motion to suppress was not against the manifest weight of the evidence, we decline defendant's invitation to address the appropriate remedy for a violation of the knock-and-announce rule under Illinois law.

### B.  Rule 402 Admonishments

Defendant also argues that his convictions must be vacated because his stipulated bench trial was tantamount to a guilty-plea proceeding, thus requiring the trial court to admonish him, pursuant to Supreme Court Rule 402 (177 Ill. 2d R. 402). We disagree.

Initially, we note that defendant failed to raise this issue at trial or in a posttrial motion.  Ordinarily, issues not raised in the trial court are considered forfeited on appeal. People v. Enoch, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988).  However, the forfeiture rule is an admonition to the parties and not a jurisdictional limitation on the reviewing court.  See, e.g., People v. Porter, 372 Ill. App. 3d 973, 977, 866 N.E.2d 1249, 1254 (2007), quoting People v. Normand, 215 Ill. 2d 539, 544, 831 N.E.2d 587, 590 (2005).  Because we conclude that responding to defendant's argument regarding his stipulated bench trial could provide guidance to trial courts, we choose to address it.

Rule 402(a) provides as follows:

"The court shall not accept a plea of guilty or a stipulation that the evidence is sufficient to convict without first, by ad-

- 16 -

dressing the defendant personally in open
court, informing him of and determining that
he understands the following[.]"  177 Ill. 2d
R. 402(a).

The rule goes on to list the admonitions defendant must be given,
such as the nature of the charge and the minimum and maximum
penalties prescribed by law.  177 Ill. 2d Rs. 402(a)(1), (a)(2).

If a "stipulated bench trial is tantamount to a guilty
plea, the trial court must admonish the defendant pursuant to
Rule 402."  People v. Mitchell, 353 Ill. App. 3d 838, 844, 819
N.E.2d 1252, 1258 (2004).  Whether a defendant's stipulated bench
trial was tantamount to a guilty-plea proceeding requiring Rule
402 admonitions is a question of law that this court reviews de
novo. Mitchell, 353 Ill. App. 3d at 844, 819 N.E.2d at 1258.

Defendant contends that the following circumstances
rendered his bench trial tantamount to a guilty-plea proceeding:
(1) the State's entire case was presented via stipulated facts,
(2) defense counsel did not challenge any of the State's evidence
of guilt, and (3) defense counsel agreed that the State had
proved defendant guilty of possession of cannabis.  We are not
persuaded.

In People v. Horton, 143 Ill. 2d 11, 22, 570 N.E.2d
320, 325 (1991), the Supreme Court of Illinois addressed a
defendant's claim that his stipulated bench trial was tantamount
to a guilty-plea proceeding, thus entitling him to be admonished
under Rule 402.  Prior to trial in Horton, defense counsel filed

- 17 -

a motion to suppress identification evidence, which the trial court denied. Horton, 143 Ill. 2d at 15, 570 N.E.2d at 321-22. Later, at a pretrial hearing, defense counsel stated that defendant was "'not contesting the sufficiency of the evidence'" and merely sought to preserve the suppression issue. (Emphasis omitted.) Horton, 143 Ill. 2d at 16, 570 N.E.2d at 322.

At the defendant's trial, all of the State's evidence was admitted by stipulation, except for the testimony of one witness. Defense counsel conducted a brief cross-examination of that witness. Horton, 143 Ill. 2d at 16, 570 N.E.2d at 322. During closing argument, defense counsel again stated that defendant was not contesting the sufficiency of the State's evidence. Horton, 143 Ill. 2d at 17, 570 N.E.2d at 322.

The supreme court concluded that the defendant's bench trial was not tantamount to a guilty-plea proceeding, specifically noting that (1) conceding during argument that the State presented sufficient evidence to convict was not equivalent to stipulating to the defendant's guilt, and (2) the defendant had presented and preserved a defense--namely, the suppression issue. Horton, 143 Ill. 2d at 21-22, 570 N.E.2d at 324-25. The court "unequivocally" held that "a stipulated bench trial is not tantamount to a guilty plea if the defendant presented and preserved a defense." Horton, 143 Ill. 2d at 22, 570 N.E.2d at 325.

More recently, in People v. Phillips, 217 Ill. 2d 270, 840 N.E.2d 1194 (2005), the supreme court addressed the issue of

- 18 -

stipulated evidence, though not precisely for the purpose of deciding the necessity for Rule 402 admonishments.  Instead, the court considered whether defense counsel can waive his client's confrontation-clause rights by entering into evidentiary stipulations.  Discussing its prior holding on the issue in People v. Campbell, 208 Ill. 2d 203, 802 N.E.2d 1205 (2003), the court wrote, in pertinent part, as follows:

> "[In Campbell,] we held that a defendant must personally waive the right of confrontation 'when the State's entire case is to be presented by stipulation and the defendant does not present or preserve a defense ***, or where the stipulation includes a statement that the evidence is sufficient to convict the defendant.'  [Citation.]  We attached no other restrictions to defense counsel's authority to stipulate to the admission of evidence, and, except in those specified instances where the stipulation is tantamount to a guilty plea, we imposed no obligations on the trial court or counsel to admonish the defendant and ensure that the advisement is made a part of the record."  (Emphasis in original.)  Phillips, 217 Ill. 2d at 283, 840 N.E.2d at 1202, quoting Campbell, 208 Ill. 2d at 218, 802 N.E.2d at 1213.

Borrowing language from Campbell and Phillips, defendant asserts that he should have been admonished under Rule 402 because the State's "entire case" was presented by stipulation.

We reject defendant's assertion for two reasons. First, defendant overlooks the additional language quoted above, indicating that a defendant's confrontation-clause rights are not at risk of being compromised unless the entire case is presented by stipulation and the defendant failed to present or preserve a defense. Phillips, 217 Ill. 2d at 283, 840 N.E.2d at 1202. In this case, defendant presented and preserved two defenses: (1) the suppression issue and (2) whether he was guilty of knowing possession of cocaine.

Moreover, we strongly disagree with defendant's characterization of the State's case as being "entirely" presented by stipulation. The evidence presented at the hearing on defendant's motion to suppress was not entered by stipulation. Instead, (1) the State put on one witness, (2) defense counsel cross-examined that witness, and (3) defense counsel put on four additional witnesses. Only later, at defendant's stipulated bench trial, did the trial court take judicial notice of the record of the hearing on defendant's motion to suppress. Thus, the concerns addressed in Phillips and Campbell are not implicated in this case. Instead, the defense preserved the suppression issue and the stipulated evidence included the transcript of the suppression hearing, at which defense counsel conducted vigorous cross-examination of the State's witness and put on

- 20 -

evidence.

Under these circumstances, Rule 402 admonitions have no place.  Under Rule 402(a)(4), the trial court must admonish the defendant that he is waiving "the right to be confronted with the witnesses against him."  177 Ill. 2d R. 402(a)(4).  Such a waiver makes no sense when defense counsel had already cross-examined the State's witness on the issue defendant preserved for review. We emphasize this point because experience teaches us that it is hardly uncommon for defendants (particularly in drug cases) who have lost their motions to suppress evidence to stipulate at their later bench trials that the trial court may consider the evidence the parties presented at the suppression hearing.  This entirely sensible practice (1) avoids wasting the court's time, as well as the time of everyone else (including the witnesses) connected with the proceedings, (2) preserves for appeal what is often the only real issue in the case--namely, the correctness of the court's denial of the defendant's motion to suppress, and (3) does not violate the defendant's right to confront and cross-examine the witnesses against him (one of the fundamental concerns underlying Rule 402) because the defendant has already exercised that right.

Moreover, Campbell and Phillips did not overrule Horton, and the circumstances in Horton bear striking similarities to those presented here.  Although in this case the State's evidence regarding the possession of cannabis and cocaine was entirely by stipulation, defendant did not stipulate to the

sufficiency of the evidence.

Further, under <u>Horton</u>, a stipulated bench trial is not tantamount to a guilty-plea proceeding if the defendant preserves a defense. In addition to arguing that the stipulated facts did not prove him guilty of cocaine possession, defendant presented and preserved a defense based on the trial court's denial of his motion to suppress evidence. (We note that in <u>Horton</u>, the sole defense the defendant had preserved was the suppression issue.)

We thus conclude that because defendant (1) did not stipulate to the sufficiency of the State's evidence and (2) preserved a defense, his bench trial was not tantamount to a guilty-plea proceeding, and the trial court was not required to admonish him under Rule 402. See <u>Horton</u>, 143 Ill. 2d at 21-22, 570 N.E.2d at 324-25; <u>People v. Rowell</u>, No. 4-04-0481, slip op. at 12 (December 15, 2006), ___ Ill. App. 3d ___, ___ N.E.2d ___ (in which this court held that even though the State's entire case was presented by stipulation, the trial court was not required to issue Rule 402 admonishments because the defendant presented and preserved a defense, and the stipulated bench trial was not tantamount to a guilty-plea proceeding).

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we grant the State its statutory assessment of $50 against defendant as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2004); see also <u>People v. Smith</u>, 133 Ill. App. 3d 613, 620, 479 N.E.2d 328, 333 (1985),

citing <u>People v. Nicholls</u>, 71 Ill. 2d 166, 179, 374 N.E.2d 194, 199 (1978).

Affirmed.

COOK, J., concurs.

MYERSCOUGH, J., specially concurs in part and dissents in part.

JUSTICE MYERSCOUGH, specially concurring in part and dissenting in part:

I respectfully specially concur in part and dissent in part. I agree the trial court properly denied defendant's motion to suppress; however, I disagree with the majority's holding that defendant was not entitled to Rule 402 admonishments during his stipulated bench trial.

Defendant's stipulated bench trial was tantamount to a guilty plea on count II, alleging the unlawful possession of cannabis. 720 ILCS 550/4(d) (West 2004). At defendant's bench trial, defense counsel stated as follows:

> "It would be difficult for me to make any argument that there wasn't sufficient proof of residence on behalf of this particular [d]efendant. It would also be difficult for me to argue the issue of possession when it comes to the cannabis. ***
>
>    ***
>
>    *** Of course, there is the felony amount of cannabis. And like I say, that was an appreciable amount."

The trial court found that it was "more or less conceded" that defendant was guilty on count II, which was unlawful possession of cannabis.

The plain language of Rule 402 requires defendant to be admonished when he stipulates that the evidence is sufficient to

- 24 -

convict. The rule states, "The court shall not accept a plea of guilty or a stipulation that the evidence is sufficient to convict without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following." (Emphasis added.) 177 Ill. 2d R. 402(a). The rule than lists the various admonitions defendant is entitled to, including the right to confront the witnesses against him.

I agree with the majority that defendant did not stipulate the evidence was sufficient to convict on count I, the knowing possession of cocaine. However, because defense counsel stipulated the evidence was sufficient on count II, such stipulation was tantamount to a guilty plea on count II and required Rule 402 admonishments. The supreme court cases addressing this issue cite two situations where defendant is entitled to admonishments: (1) when the State's entire case is to be presented by stipulation and defendant does not present or preserve a defense; or (2) the stipulation includes a statement that the evidence is sufficient to convict. See Phillips, 217 Ill. 2d at 283, 840 N.E.2d at 1202 ("[W]e held that a defendant must personally [(emphasis omitted)] waive the right of confrontation 'when the State's entire case is to be presented by stipulation and the defendant does not present or preserve a defense ***, or [(emphasis added)] where the stipulation includes a statement that the evidence is sufficient to convict the defendant.' Campbell, 208 Ill. 2d at 218[, 802 N.E.2d at 1213]"). The majority relies heavily on Horton, which was decided in 1991. The court's later

- 25 -

decision in Campbell cites Horton only insomuch as it supports the first instance in which defendant is entitled admonishments. The court's subsequent decisions in Campbell and Philips make clear that the defendant is entitled to admonishments when the stipulation contains a statement that the evidence is sufficient to convict.  Therefore, in addition to the plain language of Rule 402, the prevailing case law supports finding that defendant in this case was entitled to admonishments.

I also disagree with the majority when it states that defendant's sixth-amendment right to confront the witnesses "against him" was exercised during the motion-to-suppress hearing.  During a hearing on a motion to suppress, defendant's liberty is not at stake, the issue of guilt is not before the trier of fact, and the witnesses do not testify "against him." See United States v. Andrus, 775 F.2d 825, 836 (7th Cir. 1985) ("The right to confrontation applies when the ability to confront witnesses is most important--when the trier of fact determines the ultimate issue of fact").  Rather, a motion-to-suppress hearing has a singular purpose of determining the propriety of the search that led to the State's physical evidence in the case. In Andrus, the Seventh Circuit held that a hearing to determine the admissibility of hearsay statements did not entitle defendant to confrontation rights under the sixth amendment because the issue was not before the jury and did not determine the defendant's guilt.  Andrus, 775 F.2d at 836.  Like Andrus, the hearing on defendant's motion to suppress in this case did not afford

defendant the opportunity to cross-examine. In fact, because a motion to suppress is almost always going to be filed by a defendant, the witnesses are usually called by the defendant and questioned on direct examination by defense counsel. Cross-examination during such motions is usually the province of the State.

For these reasons, I specially concur in the majority's decision affirming the trial court's decision on defendant's motion to suppress, but I dissent as to defendant's conviction of possession of cannabis when he stipulated the evidence was sufficient to convict and was not admonished under Rule 402.