NOTICE
Decision filed 04/02/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240698-U

NO. 5-24-0698

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 06-CF-1337 |
| | ) | |
| DEMOND M. HAYNES, | ) | Honorable |
| | ) | Kyle A. Napp, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Moore and Vaughan concurred in the judgment.

**ORDER**

¶ 1   *Held*: Where the defendant was found guilty after a bench trial at which the State presented its entire case by stipulation, and the defendant preserved a defense and did not stipulate that the evidence was sufficient to convict, the circuit court did not err in dismissing the defendant's motion to withdraw his so-called guilty plea, and since any argument to the contrary would lack merit, the judgment of the court is affirmed and the defendant's appellate counsel is granted leave to withdraw.

¶ 2   After a stipulated bench trial in 2007, the defendant, Demond M. Haynes, was found guilty of first degree murder. After a hearing in aggravation and mitigation, Haynes was sentenced to 42 years in prison. In 2009, this court affirmed. In 2024, Haynes filed a *pro se* motion to withdraw his (so-called) plea of guilty. The circuit court dismissed the motion, on the grounds that it was untimely. The defendant now appeals from that dismissal order. The defendant's appointed appellate attorney, the Office of the State Appellate Defender (OSAD), has concluded that this

1

appeal lacks merit, and on that basis OSAD has filed a motion to withdraw as counsel, along with a supporting memorandum of law. See *Anders v. California*, 386 U.S. 738 (1967). Haynes has filed a written response. Having reviewed the filings of OSAD and of Haynes, and having examined the pertinent parts of the record on appeal, this court agrees with OSAD's assessment of the appeal. This appeal has no merit because Haynes filed a motion to withdraw guilty plea in a case in which he did not, as a matter of fact and law, plead guilty. OSAD's *Anders* motion must be granted, and the judgment of the circuit court must be affirmed.

¶ 3                                        BACKGROUND

¶ 4                                         *Pretrial*

¶ 5      In June 2006, Alan "Brian" Curtis was beaten to death at his apartment in Granite City, Illinois. Shortly thereafter, Haynes was arrested for the murder of Curtis. Haynes provided police interrogators with several hours of statements. Before trial in this case, Haynes filed, through the public defender who represented him, a motion to suppress those statements, on grounds that included impropriety of the *Miranda* warnings. See *Miranda v. Arizona*, 384 U.S. 436 (1966). Following a hearing, the circuit court found, *inter alia*, that the warnings were adequate. The court denied the suppression motion.

¶ 6                                  *Trial and Sentencing*

¶ 7      In December 2007, Haynes was tried on three counts of first degree murder, all of which stemmed from the death of Curtis. A jury was seated. It heard opening statements and the testimonies of eight of the State's witnesses. The next morning—December 12, 2007—Haynes's public defender informed the trial judge that Haynes wanted to waive his right to a jury trial and proceed to a stipulated bench trial. The judge began to pose questions to Haynes.

¶ 8    First, the judge asked Haynes whether it was he who had signed a written jury-waiver form that the judge was looking at, and Haynes answered in the affirmative. Haynes indicated that he had reviewed the jury-waiver form with his public defender and that he did not have any additional questions about it. Haynes indicated his understanding that he had a constitutional right to a trial, and that if he waived jury trial, the evidence would be presented to the judge alone, who would then make a determination as to Haynes's guilt. Haynes indicated that he wished to waive his right to a jury and did not have any questions for the judge about the matter.

¶ 9    At that point in the proceedings, Haynes told the judge, "This here [*sic*] what I'm doing is basically an Alford plea." The judge replied, "No," and he explained the difference between an *Alford* plea and a stipulated bench trial: "An Alford Plea means that you are pleading guilty. A stipulated bench trial means you're not pleading guilty. You are agreeing that the evidence would be as set forth in what I'm going to hear in a moment." The public defender then interjected, "I think I have suggested to him it's actually better than an Alford Plea because with an Alford Plea he couldn't appeal." When the judge asked Haynes whether he understood "all that," Haynes answered, "Yes." The judge then asked, "If you have anymore [*sic*] questions for [the public defender] or me, you just let me know, alright?" Haynes answered, "Yes."

¶ 10    In answer to further questions from the judge, Haynes stated that he was 22 years old, and that he had gone as far as the ninth grade in school, and he indicated that he could read and write English, that he was not under the influence of any drugs, and that he did not have any physical or mental problems that interfered with either his hearing or his understanding of court proceedings. Again, the judge asked Haynes, "[I]f you do have any questions as we go through this, you will let me know, please, right?" Again, Haynes answered, "Yes." Haynes indicated to the judge that no promises had been made to him, apart from that which was discussed in open court, and no threats

3

or coercion had been used against him. The public defender then interjected that "part of this stipulated bench trial agreement is when it goes to sentencing," the State would recommend no more than 45 years in prison, and the parties would be asking the court to bind itself to a sentence between 20 and 45 years. The judge asked Haynes whether he understood that important aspect of the parties' agreement, and Haynes indicated that he did.

¶ 11　The colloquy between the judge and Haynes continued:

> "THE COURT: So that if we proceed with a bench trial, and that's a stipulated bench trial, that would be my decision as to whether you're guilty or not guilty.
>
> If I do find that you are guilty, then the State and you have agreed that the range of sentence would be limited to a maximum of 45 years in the Illinois Department of Corrections.
>
> MR. HAYNES: Yes."

The judge finished his admonitions by asking Haynes whether he understood that the minimum sentence for first degree murder was 20 years, and that after his prison sentence, he would serve mandatory supervised release for 3 years, and Haynes indicated his understanding. The judge found that Haynes understood his rights and had made a knowing, voluntary, and intelligent waiver of his right to a jury trial.

¶ 12　The court then announced that it would proceed immediately to a stipulated bench trial. "A stipulated bench trial," the judge said, apparently addressing Haynes, "means that the State will recite what they believe the evidence will be, and if you and your attorney agree that that's the evidence I should consider, then that's the evidence I will consider, okay." At that point, the State recited, in detail, what the State's evidence would be. (This portion of the stipulated bench trial covers 9½ pages in the report of proceedings.) Essentially, the beating death of Curtis was linked

4

to Haynes through DNA evidence and through the testimony of Haynes's then-15-year-old codefendant. The State's recitation of evidence included some portions of Haynes' custodial statements to police, which varied wildly from one account to the next, and which were highly incriminating. The public defender stipulated that the evidence the State had recited was the evidence he expected. The judge then questioned Haynes:

> "THE COURT: And, Mr. Haynes, you understand what that means? That's the evidence that the State is submitting for me to consider.
>
> You understand that?
>
> MR. HAYNES: Yes.
>
> Q. You agree that is the evidence I should consider in this case?
>
> A. Yes."

The public defender indicated that he did not have anything to add. The colloquy between the judge and Haynes continued:

> "THE COURT: Mr. Haynes, then what that means is this evidence that's been submitted has been stipulated to. That means agreed that that is the evidence that the Court should consider is [*sic*] the basis for my judgment in the case.
>
> Do you understand that?
>
> MR. HAYNES: Yes, sir.
>
> Q. And is that what you wish to do?
>
> A.Yes, sir.
>
> Q. All right."

Immediately, the judge found, "based on the facts presented, the evidence submitted through stipulations," that Haynes was guilty on all three counts of first degree murder. The judge ordered

5

preparation of a presentence investigation report, and he looked forward to a sentencing hearing at which Haynes would be sentenced to imprisonment for no more than 45 years. The day's proceedings ended with the judge's asking, "Any questions about anything, Mr. Haynes?" Haynes answered, "No, sir."

¶ 13    Haynes, by his public defender, filed a posttrial motion. He alleged that the judge had erred when it denied his motion to suppress his statements to police, and he sought a judgment notwithstanding the verdict or, alternatively, a new trial. After hearing the attorneys' arguments, the judge found that he had ruled correctly on the suppression motion, and he denied the posttrial motion.

¶ 14    At a later date, the judge held a hearing in aggravation and mitigation. On a single count of first degree murder, the judge sentenced Haynes to imprisonment for 42 years, to be followed by mandatory supervised release for 3 years. Haynes perfected a direct appeal. OSAD was appointed as his direct-appeal counsel.

¶ 15                                     *Direct Appeal*

¶ 16    While the direct appeal was pending, Haynes wrote a letter to the OSAD attorney who was handling it. He wrote that one of the issues he wanted to see raised was that his stipulated bench trial was "tandramount [*sic*] to a guilty plea."

¶ 17    On direct appeal, OSAD did not raise the suggested issue. OSAD raised, as the sole issue in the direct appeal, whether Haynes was denied a fair sentencing hearing. This court concluded that he was not so denied, and it affirmed the sentence. *People v. Haynes*, No. 5-08-0111 (Oct. 20, 2009) (unpublished order under Illinois Supreme Court Rule 23).

6

¶ 19     In 2010, Haynes filed a *pro se* petition for postconviction relief. See 725 ILCS 5/122-1 *et seq.* (West 2010). The circuit court appointed postconviction counsel for Haynes. (Postconviction counsel was different from the public defender who had represented Haynes at trial.) In 2013, Haynes filed, by postconviction counsel, an amended postconviction petition and a second amended postconviction petition. The second amended petition raised a wide variety of claims of ineffective assistance by the public defender at trial and by direct-appeal counsel. In a claim alleging that the public defender had allowed Haynes "to give up his right to a fair trial," Haynes stated that he "had a bench trial that was equivalent to a guilty plea." Haynes filed a *pro se* supplement to this petition.

¶ 20     In 2015, the circuit court held an evidentiary hearing on Haynes's second amended postconviction petition. (The judge who presided at the evidentiary hearing was a judge other than the one who had presided at the proceedings that led to conviction; the latter judge had retired.) There were two witnesses at that hearing—Haynes, who testified on his own behalf, and Haynes's public defender at his trial, who testified for the State.

¶ 21     Haynes testified that when he decided to stop his jury trial, neither his public defender nor the trial judge explained to him, in detail, the significance or the consequences of a jury waiver. Haynes had a discussion with his public defender, but the public defender never mentioned or explained the concept of a stipulated bench trial. It was not until he was standing before the trial judge that Haynes first heard of a stipulated bench trial, and Haynes thought even at that time that a stipulated bench trial was the same as a bench trial. The judge did not admonish Haynes that at a stipulated bench trial, no State's witnesses would testify or be cross-examined. Haynes did not know that his jury waiver would make possible an unfair trial, and he did not know that he was,

essentially, pleading guilty. If he had known the sort of proceeding he was making possible by his action, he "would have stuck with the jury trial."

¶ 22    The evidentiary hearing also included testimony from Haynes's public defender at trial. The public defender testified that Haynes had expressed a desire to stop the jury trial after hearing the testimony of a police investigator who had described the gory crime scene. The public defender thoroughly explained to Haynes the significance of waiving a jury, and he felt confident that after his explanation, Haynes understood that significance. The public defender also felt confident that he was the one who had thought of having a stipulated bench trial, as a way of preserving issues for appeal, and he discussed that subject with Haynes prior to appearing before the judge. He did not coerce Haynes into signing the jury-waiver form, and he did not tell Haynes that the whole process could be speeded up if Haynes were to consistently indicate to the judge that he understood stipulated bench trials, regardless of whether he actually understood them. He recalled presenting the jury-waiver form to the judge, and he remembered the judge's admonishing Haynes and asking him questions to make sure that Haynes understood the implications of a jury waiver.

¶ 23    After taking the matter under advisement, the court entered an order that denied the postconviction petition. In the denial order, the court quoted extensively from the transcript of the stipulated bench trial, and the court found that the trial judge had thoroughly admonished Haynes about stipulated bench trials, and that Haynes knowingly and voluntarily waived jury and chose a stipulated bench trial. Haynes appealed. OSAD was appointed his counsel.

¶ 24                                    *Postconviction Appeal*

¶ 25    On appeal from the denial of his postconviction petition, Haynes argued that postconviction counsel (1) had failed to comply with Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984) and (2) had failed to provide a reasonable level of assistance at the evidentiary hearing. In August

8

2019, this court rejected his arguments and affirmed the circuit court's denial order. *People v. Haynes*, 2019 IL App (5th) 150221-U.

¶ 26                    *Motion to Withdraw Guilty Plea:*

                       *The Subject of the Instant Appeal*

¶ 27    On April 1, 2024, Haynes filed *pro se* a "motion to vacate judgment and withdraw plea of guilt [*sic*]." In one paragraph of that motion, Haynes wrote that he had "waived his rights to a trial by jury and entered a stipulated bench trial, which unbeknownst to him was a plea of guilt [*sic*]." In another paragraph, he wrote "that the stipulated bench trial he entered was the practical equivalent of a plea of guilt [*sic*] in which [*sic*] was incumbent upon the court to admonish him to [*sic*] Supreme Court Rule 402(a)(4)."

¶ 28    On April 26, 2024, the circuit court dismissed Haynes's motion, stating that it was untimely. The court noted that its jurisdiction over the matter had "long since lapsed."

¶ 29    Haynes filed a notice of appeal. OSAD was appointed to represent him on appeal.

¶ 30                              ANALYSIS

¶ 31    This appeal is from the circuit court's order that dismissed Haynes's motion to withdraw his (so-called) guilty plea. This court reviews judgments, not rationales, and it may affirm a judgment for any reason supported by the record, regardless of the rationale that the circuit court gave for its judgment. *D'Attomo v. Baumbeck*, 2015 IL App (2d) 140865, ¶ 30.

¶ 32    In his *pro se* "motion to vacate judgment and withdraw plea of guilt [*sic*]," Haynes asserted that by agreeing to a stipulated bench trial, he was, in effect, pleading guilty, and therefore the court needed to admonish him pursuant to Illinois Supreme Court Rule 402(a)(4) (eff. July 1, 2012). Rule 402(a)(4) requires a circuit court to inform a defendant, prior to accepting his or her plea of guilty or his or her stipulation that the evidence is sufficient to convict,

9

"(4) that if he or she pleads guilty there will not be a trial of any kind, so that by pleading guilty he or she waives the right to a trial by jury and the right to be confronted with the witnesses against him or her; or that by stipulating the evidence is sufficient to convict, he or she waives the right to a trial by jury and the right to be confronted with any witnesses against him or her who have not testified." Ill. S. Ct. R. 402(a)(4) (eff. July 1, 2012).

¶ 33    There is one simple, crucial flaw in the assertion in Haynes's motion: when Haynes waived jury and agreed to a stipulated bench trial, he most definitely did not plead guilty. As the judge admonished Haynes prior to the stipulated bench trial's commencement, Haynes was not pleading guilty but was, instead, agreeing that the judge would determine whether Haynes was guilty, based on stipulated evidence. Haynes understood as much, as the judge explicitly found, and as the transcript from December 12, 2007, quoted *supra*, establishes. Furthermore, Haynes's stipulated bench trial was not tantamount to a guilty plea. Whether a defendant's stipulated bench trial is tantamount to a guilty plea is a question of law, subject to *de novo* review. *People v. Chapman*, 379 Ill. App. 3d 317, 326 (2007). Our supreme court has held that a stipulated bench trial is tantamount to a guilty plea, thereby occasioning Rule 402 admonitions, when either (1) "the State's entire case is to be presented by stipulation *and* the defendant does not present or preserve a defense," or (2) "the stipulation includes a statement that the evidence is sufficient to convict the defendant." (Emphasis in original.) *People v. Clendenin*, 238 Ill. 2d 302, 322 (2010). Here, while the State's entire case was presented by stipulation, the defense nevertheless preserved a defense, namely, the suppression-of-statements issue, which the public defender anticipated would be the basis of a direct appeal. Also, the stipulation did not include a statement that the evidence was

10

sufficient to convict Haynes; Haynes's public defender merely stipulated to the evidence itself, not to its legal sufficiency.

¶ 34                                      CONCLUSION

¶ 35    Haynes's agreeing to a stipulated bench trial was not a plea of guilty, and it was not tantamount to a plea of guilty. Haynes pleaded not guilty, and he had a trial, albeit an uncommon type of trial. Therefore, his motion to withdraw guilty plea was simply the wrong type of motion for the circumstances here. Haynes could not move to withdraw a guilty plea when he never had tendered one. Regardless of what else can be said about this case (*e.g.*, untimeliness, issues of waiver and *res judicata*), that is the most fundamental truth about it. Accordingly, the circuit court's dismissal of the motion to withdraw plea is affirmed, and OSAD is granted leave to withdraw as counsel.


¶ 36    Motion granted; judgment affirmed.